**Lutie O. COPENHAVER**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 74–89–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

Jan. 16, 1975.

Richard A. Money, Legal-Aid Society, Marion, Va., for plaintiff.

E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va., for defendant.

MEMORANDUM OPINION
and ORDER

TURK, Chief Judge.

This is an action under § 205(g) of the Social Security Act, 42 U.S.C. 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for old-age insurance benefits on her own account. Her claim was denied on the ground that she lacked the requisite quarters of

coverage. To qualify for old-age insurance benefits, an applicant must meet the requirements of § 202(a) of the Social Security Act, 42 U.S.C. § 402(a). That section provides that:

"(a) Every individual who—(1) is a fully insured individual (as defined in section 214(a) . . .), (2) has attained age 62, and (3) has filed an application for old-age insurance benefits . . . shall be entitled to an old-age insurance benefit for each month, beginning with the first month after August 1950 in which such individual becomes so entitled to such insurance benefits and ending with the month in which he dies . . ."

Section 214(a), 42 U.S.C. § 414(a) defines "fully insured individual as:

" . . . any individual who had not less than one quarter of coverage (whenever acquired) for each calendar year elapsing after 1950 (or if later, the year in which he attained age 21) and before the year in which he died or (if earlier) the year in which he attained age 62, . . ."

Section 213(a)(2), 42 U.S.C. § 413(a) (2) states that "the term 'quarter of coverage' means a quarter in which the individual has been paid $50 or more in wages . . . or for which he has been credited . . . with $100 or more of self-employment income . . . ." However, § 211(b)(2), 42 U.S.C. § 411 (b)(2), provides that "[t]he term 'self employment income' means the net earnings from self-employment derived by an individual . . . except that such term shall not include . . . [t]he net earnings from self-employment, if such net earnings for the taxable year are less than $400. . . ." Finally, § 210(j), 42 U.S.C. 410(j) states that "the term 'employee' means—any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee . . . ."

The evidence shows that Miss Copenhaver was born on March 6, 1910, and therefore, attained age 62 on March 6,

1972. Thus, plaintiff needed one quarter of coverage for each calendar year after 1950 and before 1972, or 21 quarters of coverage. Prior to 1972, plaintiff earned 19 quarters of coverage, two short of the required amount. The central question before the Administrative Law Judge and the controlling question in this case is the status of plaintiff's babysitting job during the months of January through July of 1972. Specifically, the issue determined by the Secretary was whether earnings accrued by plaintiff of less than $400.00 for babysitting services performed in her home during the first and second quarters of 1972 qualified as wages from employment rather than income from self-employment. If she were an employee, she would qualify for two quarters of coverage in 1972, but if she were an independent contractor, she would not so qualify. The Secretary concluded that Miss Copenhaver was an independent contractor.

From January through July of 1972, Miss Copenhaver babysat in her own home with the five year old child of her niece and her niece's husband, Mr. J. Gordon Tuell. This arrangement was effected in order to enable both parents to work. Plaintiff was paid $40.00 for a full month's babysitting, but during the first week in January, the week of Easter, and two weeks in June she did not sit with the child and was paid only $30.00 for these months. In all, she was actually paid $100.00 per quarter for the first and second quarters of 1972. Mr. Tuell did not withhold Social Security from the sums paid Miss Copenhaver, but himself paid the full amount.

The Social Security regulations which set forth guidelines for determining whether the employer-employee relationship exists expand beyond the definition of "employee" as set out in § 210(j) of the Act, 42 U.S.C. § 410(j). The applicable regulation, 20 C.F.R. § 404.1004(c) provides in part:

(1) Every individual is an employee if under the usual common-law rules the relationship between him and the

person for whom he performs services is the legal relationship of employer and employee.

(2) Generally, such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished; that is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor.

. . .

With regard to the supervision and control of the babysitter, the evidence demonstrated that the Tuell's brought their daughter to plaintiff's home every morning and picked her up after work. Instructions were given to Miss Copenhaver every day as to the care and feeding of the child, whether the child should play inside or outside, and the kinds of things the child could do, or could not do. Plaintiff was supplied by the child's parents with all the materials necessary to care for the child as instructed, and on those occasions when the child was ill, Miss Copenhaver was instructed specifically as to the proper medicine to give the child, and as to her activities for that day.

Mr. Tuell stated that both he and Miss Copenhaver reserved the right to discontinue the babysitting arrangement at any time. He further stated that the child was kept in plaintiff's home instead of his for two reasons: The Tuells were living with his mother-in-law and he did not want to impose on her, and because of the illness of plaintiff's mother, Miss Copenhaver needed to stay at home and care for her. The arrangement was terminated in June when Mrs. Tuell's summer vacation started. It is also significant to note that plaintiff did not hold herself out as a babysitter to the general public, and aside from an occasional favor to a relative, this was the only sitting she ever did, and especially the only sitting for which she was ever compensated.

In holding that plaintiff was not an employee of Mr. Tuell's, the Administrative Law Judge relied heavily on Social Security Ruling No. 61–27:

"R takes care of a child, C., whose mother, M, works during the day. M brings C to R's Home at 8:00 A.M. and picks her up at 5:00 P.M., Monday through Friday. M. furnishes C's milk, but R furnishes and prepares C's noon meal. For her services and for providing a noon meal for C each day, R is paid x dollars per day. Under the arrangement, with M, R cares for the child personally, but is given no instructions as to how to do so, except when special medicines are required for C. R uses her own judgment as to how to care for C and what kind of meals to prepare. R is also free to do her own housework when C does not require her attention, such as when C is taking her afternoon nap. R does not hold herself out to the public as being available to do such work and she has not done this type of work for anyone else."

In holding that under the above facts R is not an employee of M, the ruling states that where:

". . . the parent does not give the person any instructions how to

care for the child, *except with regard to such special matters as diet, health, rest, and occasionally special medicines or special foods*, such facts, by themselves, do not show a right to control and direct the person in the performance of her services to the extent that is necessary under the usual common-law rules to establish the relationship of employer and employee." (Emphasis added).

The Administrative Law Judge also cites Miller v. Richardson, CCH UIR, Vol, 1A, ¶ 16 000.932 (W.D.Ky.1972) in support of his conclusion that plaintiff was not an employee. There, the District Court ruled that the plaintiff's performance of daily babysitting services in her own home, in the care of her sister's children, failed to meet the requirements of bona fide employment for entitlement to quarters of coverage. In discussing the degree of control established, the District Court Judge stated:

"The documentary and testimonial evidence of record reveal that the plaintiff was not controlled by her sister as to both the means and result of the work assumed, the opportunity for loss by the plaintiff existed and actually occurred, and the plaintiff had a patent investment in the facility wherein the employment took place. Unquestionably, Mrs. Powell directed the desired result to be accomplished by the plaintiff's undertaking since the evidence of record revealed that she instructed the plaintiff to 'just watch them and don't let them get hurt and make sure the oldest one got to school', while expecting the plaintiff to care for her (Mrs. Powell's) two children as the plaintiff would care for her own. However, the evidence is to an equal degree, void of any indications as to how this care, attention, and protection of Mrs. Powell's children was to be accomplished by the plaintiff. By way of documentary evidence, the plaintiff disclosed that she was given no specific detailed instructions with regard to the manner in which the care of her sister's

children was to be provided. The fact that care similar to that provided for the plaintiff's children was expected to be bestowed upon Mrs. Powell's children reveals the profound concern for children possessed by the plaintiff, and Mrs. Powell, rather than controlling the means of the desired task, left that undertaking to the plaintiff's discretion. That the work was performed as well as it was would appear to be attributable more to the plaintiff's motherly instincts and devotion than to any guidance furnished by Mrs. Powell."

This court is of the opinion that more supervision and control is shown in the present case than in *Miller*. In fact, the present case seems more analogous to the case relied upon by plaintiff—Holland v. Celebrezze, 223 F.Supp. 347 (E. D.Tenn.1963).

In *Holland* the plaintiff kept her brother's child in her own home while the father was working. The plaintiff was to feed and discipline the child, send her to school, and take care of her clothing. The father would visit the child on weekends only, and at such time he would further instruct the babysitter as to the child's wardrobe, recreation, school, and other acitivites. For these services the plaintiff was paid $50.00 per calendar quarter.

The circumstances in the present case involve much more supervision of the babysitter than that exhibited in either *Holland* or *Miller* because of the daily instruction here and the specificity of those instructions with regard to care and feeding, recreational activities, and behavior. While this court will not treat the above quoted Social Security opinion lightly, the subsequent judicial decisions on this subject should be entitled to more weight. Considering the underlying policy of the Social Security Act and the liberality with which its terms should be construed, the court is willing to resolve any doubts as to coverage in favor of the plaintiff. Accordingly, it is the conclusion of the court that plaintiff has carried her burden of

proof. Thus, the decision of the Secretary is reversed, and it is ORDERED that the case be remanded to the Secretary for the payment of benefits to plaintiff.