**Helen A. McDEVITT**

**v.**

**Patricia Roberts HARRIS, Secretary of Health, Education and Welfare.**

Civ. A. No. 80–351.

United States District Court,
E. D. Pennsylvania.

Sept. 17, 1980.

John F. McDevitt, Jr., Philadelphia, Pa., for plaintiff.

Thea Duell, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff, Helen A. McDevitt, brought this appeal from a decision of the Secretary of Health, Education and Welfare (now, Health and Human Services), in which the Secretary denied Ms. McDevitt's request for retirement insurance benefits. The single question presented by this appeal is whether the Secretary applied the proper standards in concluding that the sums which Mr. McDevitt earned by baby–sitting in 1974–76 were not income derived from a "trade or business" within the meaning of 42 U.S.C. § 411(a).

### I.

The facts are not in dispute. In July, 1977, Ms. McDevitt attained the age of 62 and became eligible to apply for retirement insurance benefits under 42 U.S.C. § 402(a). During the preceding three–year period, she had rendered child–care services for her daughter and son–in–law, both of whom were employed and unable to care for their child during working hours. Ms. McDevitt cared for her infant grandchild, usually at her own home, between the hours of 7:30 A.M. and 5:00 P.M., five days per week through June, 1974, and two days per week thereafter. At no time during the period in question did she advertise or otherwise seek the opportunity to provide child–care for other families.

In exchange for her services, Ms. McDevitt received a fixed monthly fee. She reported earnings, totalling $799 in 1974, $510 in 1975, and $475 in 1976, on her federal income tax returns, as self–employment income. Also, in each year, she paid Social Security self–employment taxes on the income.

In August, 1978, Ms. McDevitt filed an application for retirement insurance benefits with the Bureau for Social Security Benefits. To qualify for benefits conferred under 42 U.S.C. § 402(a), an accumulation of twenty–six "quarters of coverage," in the form of wages or self–employment income, must be demonstrated by the applicant. 42 U.S.C. § 414(a). Because her earnings for the period 1974–1976 did not comprise wages, they could be credited toward the requisite quarters of coverage only if they fell within the definition of self–employment income supplied by 42 U.S.C. § 411(a); that definition embraces only those earnings which are "derived from [a] trade or business." And, indeed, Ms. McDevitt listed her earnings from child–care services as self–employment income.

In October, 1978, the Social Security Administration awarded Ms. McDevitt the retirement insurance benefits for which she had applied. The Bureau of Retirement and Survivor's Insurance of the Social Security Administration revoked the award in April, 1979, for the reason that the income listed for the period 1974–76 had not been earned pursuant to a "trade or business" within the meaning of 42 U.S.C. § 411(a), and that, with that income excluded, Ms. McDevitt lacked the twenty–six "quarters of coverage" required by 42 U.S.C. § 414(a).

In May, 1979, Ms. McDevitt challenged the revocation. On July 25, 1979, a hearing was held before an Administrative Law Judge who ruled, *inter alia*, that Ms. McDevitt was not entitled to receive retirement insurance benefits because her failure to "hold herself out to others as providing child care services" precluded a determination that her earnings during the period 1974–76 had been the product of a trade or business.

Thereafter, Ms. McDevitt submitted a timely request to the departmental Appeals Council for a review of the ruling of the Administrative Law Judge. On November 26, 1979, the Appeals Council denied the request; the ruling of the Administrative

Law Judge thereby became the final decision of the Secretary. Within the sixty-day period prescribed by 42 U.S.C. § 405(g), Ms. McDevitt sought review of the Secretary's decision by commencing this action.

## II.

Before proceeding to the merits, it would seem useful to set forth in pertinent detail the several relevant statutory provisions:

(1) Section 402(a) of Title 42 provides that benefits will be awarded only to "(1) . . . a fully insured individual (as defined in section 414(a) of this title)."

(2) Section 414 provides in pertinent part:

(a) The term "fully insured individual" means any individual who had not less than—

(1) one quarter of coverage . . . for each calendar year elapsing after 1950 (or, if later, the year in which he attained the age of 21) and before the year in which . . . he attained age 62 . . .

For Ms. McDevitt, all parties agree, the required number of quarters of coverage is twenty-six.

(3) A definition of the phrase "quarter of coverage" is set forth in § 413(a), which states in relevant part:

(1) The term "quarter" . . . means a period of three calendar months ending on March 31, June 30, September 30, or December 31.

(2) The term "quarter of coverage" means a quarter in which the individual has been paid $50 or more in wages . . . *or for which he had been credited . . . with $100 or more of self-employment income* . . . (emphasis added).

Because no claim is made that plaintiff was paid wages during the period 1974–76, her income during that time, which exceeded $400 per annum, can be credited toward quarter of coverage only if it comprised self-employment income.

(4) Section 411, which defines self-employment income, is the focal point of controversy here:

(a) The term "net earning from self-employment income" means the gross income, as computed under chapter 1 of Title 26, Internal Revenue Code of 1939, derived by an individual from any trade or business carried on by such individual, less the deductions allowed under such chapter which are attributable to such trade or business.

Thus, plaintiff's earnings during 1974–76 can be characterized as self-employment income only if they were the product of a trade or business.

(5) Section 411(c) of Title 42 recites:

The term "trade or business," when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 23 of Title 26, Internal Revenue Code of 1939 . . . .

(6) Section 23 of Title 26, recodified at 26 U.S.C. § 162, does not define the phrase "trade or business." It states:

(a). . . There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.

## III.

■ The Administrative Law Judge held that Ms. McDevitt's failure to hold herself out to others as a provider of child-care was adversely dispositive of her contention that she had been engaged in a trade or business during the contested quarters. Ms. McDevitt argues that, in so holding, the Administrative Law Judge, hence the Secretary, applied a faulty legal standard; in her view, a person may, under certain circumstances, be found to have carried on a trade or business, notwithstanding that there has been no attempt to solicit business.

As noted above, neither 42 U.S.C. § 411, nor 26 U.S.C. § 162, defines the phrase "trade or business." The concept connotes something more than activity undertaken in pursuit of profit. *See Whipple v. C. I. R.,* 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288

(1963). Whether that "something more" is to be found in any particular activity "requires," as the Supreme Court noted in *Higgins v. Commissioner*, 312 U.S. 212, 217, 61 S.Ct. 475, 478, 85 L.Ed. 783 (1941), "an examination of the facts in each case."

On this appeal, the Secretary contends that holding oneself out as a provider of goods or services is one of several factors essential to the conclusion that particular activity is a "trade or business." In support of this position, the Secretary relies on the dictum of our Court of Appeals in *McDowell v. Ribicoff*, 292 F.2d 174, 178 (3d Cir. 1961), *cert. denied*, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 135 (1961) that, "[T]he phrase 'trade or business' must refer not merely to Acts [*sic*] engaged in for profit, but to extensive activity over a substantial period of time during which the Taxpayer holds himself out as selling goods or services." The dictum is phrased in the conjunctive, suggesting that each factor must be present to support a finding of "trade or business." But a careful scrutiny of the entirety of the court's analysis in *McDowell* reveals that a conjunctive test was not intended by the court.

The social security claimant in *McDowell* sought to establish that fees received as executor of the estate of a close relative constituted income derived from a "trade or business." Concededly not a professional fiduciary, the claimant undertook to bring herself within the terms of a category described by Revenue Ruling 58–5 as "persons who serve as executor or administrator in isolated instances, and then as personal representative for the estate of a deceased friend or relative." The Ruling contemplated that such persons might, depending on the facts, be found to have conducted a "trade or business."[1] Not only did the Ruling not require a public holding out of one's availability as an executor, such a holding out would have been the antithesis of the "isolated," relative–or–friend oriented, service which was the crux of the activity covered by the Ruling. The Court of Appeals in *McDowell* approved and applied that Ruling.[2] And so it is apparent that a public holding out of one's vocation is not, at least in this Circuit, an indispensable element of conduct of a "trade or business."

Under the Ruling, and under *McDowell*, even absent a holding out to the public, and notwithstanding a family relationship, the continuity and extent of profit–motivated activity may nonetheless evidence an individual's participation in a "trade or business." See also *Bayles v. Folsum*, 157 F.Supp. 866 (N.D.W.Va.1958).

In 1961, the same year as *McDowell*, H. E. W. issued a Social Security Ruling setting forth a statement of apparently general application:

In determining the existence or non–existence of a trade or business, factors taken into consideration include: (1) whether the activity was initiated and performed with a profit motive; (2) whether it was regular and continuous; (3) whether it was engaged in as a regular occupation or calling; and (4) whether the individual held himself out to others as being engaged in the selling of goods or services. *No single factor is controlling, and each individual case must be resolved on its own merits with due consideration of the entire factual situation.* (emphasis added)

---

1. Under the Ruling considered in *McDowell*, a finding of a trade or business would be permitted where there was a trade or business among the assets of the estate. In addition, the Ruling provided that:

 In some cases the activities of the executor of a single estate may constitute the conduct of a trade or business even though the assets of the estate do not include a trade or business as such. *If, for example, an executor manages an estate which requires extensive management activities on his part over a long period of time, an examination of the facts may show that such activities are sufficient in scope and duration to constitute the carrying on a trade or business * * * Rev.Rul. 58 5, 1958 Cum.Bull. 322. (emphasis added)

2. The court approved the Secretary's decision to disallow the claim because the record adequately supported the conclusion that "no extensive management activities" had been required of the plaintiff.

Soc.Sec. Rul. 61–44, 1961 S.S.R. 63, 64. The 1961 departmental summary of relevant considerations represents a salutary attempt to rationalize the determination whether a particular course of economic behavior constitutes a "trade or business" within the meaning of § 411(c). The summary appears consistent with Treasury practice.[3] And the department's injunction that no single factor is controlling is consistent with the approach taken to "trade or business" in *McDowell*, and with the Supreme Court's direction in *Higgins* that each case be decided on its facts. It thus presents the analytic framework within which Ms. McDevitt's claim should have been considered.

### IV.

■ Whether Ms. McDevitt's activities were of such extent and duration, and so motivated by profit, that they will permit

3. H. E. W.'s approach to baby sitting in this case appears to conflict with the analysis of "baby ·sitting" set forth in Rev.Rul. 77-279, 1977 -2 C.B. 12. The Administrative Law Judge rejected that Ruling as irrelevant to the issue here.

Although the focus of the Revenue Ruling is on the question whether the form of baby sitting therein described constitutes employment or self employment -an issue not presented on this appeal applying a framework similar to that set forth in Soc.Sec. Rul. 61 44, Rev. Ruling 77 279 quite clearly sanctions the treatment of baby sitting as a "trade or business" when carried on for a profit, in the baby sitter's home, notwithstanding the fact that "the individual is not held out to the public as engaging in day care work." As noted above, the term "trade or business," as employed in Section 411(c) of Title 42, is assigned the same meaning as when used in the tax code. Although Revenue Rulings are not more binding on the Secretary than they are on the Commissioner and the courts, they have, in this context, been applied by the Secretary and, in turn, cited with approval by the Court of Appeals for the Third Circuit. See *McDowell v. Ribicoff, supra.* In light of the intended symmetry between the interpretation of the Code and the Social Security Act on this point, relevant Revenue Rulings warrant respectful consideration and are not to be lightly disregarded.

4. There is support in the record for the basic findings that Ms. McDevitt provided child--care services on a "regular and continuous" basis and with a "profit motive." As the Administrative Law Judge reported, plaintiff stated that

Ms. McDevitt to surmount the negative inferences that might be drawn from the fact that she performed those activities exclusively for her infant grandchild, I venture no view. That is a factual question for the Secretary's determination in the first instance. But the Administrative Law Judge's unelaborated holding that Ms. McDevitt's failure to hold herself out as a provider of child care services precluded the determination that her services had been rendered pursuant to a trade or business, presents a departure from prior departmental rulings, the rulings of the Internal Revenue Service, and the law of this Circuit. Because there is factual support for the conclusion that Ms. McDevitt conformed to other relevant criteria,[4] I conclude that the decision of· the Secretary must be set aside and the case remanded for additional fact—finding and evaluation.[5]

"she did this work for her daughter, (1) to help her daughter as she had difficulties with other baby sitters, and (2) to obtain some income, hoping it would help get Social Security Administrative coverage *as well as for the monetary value.*" (emphasis added)

It appears that the Administrative Law Judge drew a negative inference from the fact that Ms. McDevitt did not attempt to deduct trade or business expenses from her income under 26 U.S.C. § 162. Although one manner of restating the question whether income is the product of a trade or business is to inquire whether trade or business expenses *could have been* deducted from the earnings under § 162, the fact that such a deduction was not attempted has little bearing on whether such a deduction was appropriate.

5. The Administrative Law Judge apparently perceived plaintiff's characterization of her activities as self employment as an attempt to avoid the strictures of 20 C.F.R. § 404.1011. That regulation provides, in relevant part:

(a) Certain services are excepted from *employment* because of the existence of a family relationship between the *employee* and the *individual employing him.* The exceptions are as follows:

\* \* \* \* \* \*

(2)(ii) Services not in the course of the *employer's* trade or business performed after 1960 by a father or mother in the *employ* of his or her son or daughter; (emphasis added).

Neither McDevitt nor the Secretary has maintained, at any point in these proceedings, that

McDevitt was an employee of her daughter. See generally, 42 U.S.C. § 410(a)(3)(B); *Copenhaver v. Weinberger*, 388 F.Supp. 127 (D.C.Va. 1975); *Wycklendt v. Weinberger*, 381 F.Supp. 479 (D.C.Wis.1974). The sole issue raised was whether the earnings at issue comprise *self employment* income. Section 404.1011, which pertains solely to employer·employee relations, has no direct application.

But, while 20 C.F.R. § 404.1011 neither controls, nor evidences a permissible departmental policy to exclude services performed for family members from the rubric of "trade or business," the Secretary may take the presence of a close personal relationship into account for the purposes of (1) evaluating the evidence, and (2) determining the relative significance of each of the relevant factors, in reaching the ultimate determination whether plaintiff's activity constituted a trade or business. For example, the fact of family relationship may bear upon the Secretary's evaluation of the applicant's profit motive in undertaking the service. See Soc. Sec. Rul. 61 44, *supra*.