Joseph P. CONNORS, Sr.,
et al., Plaintiffs,

v.

**HI–HEAT COAL COMPANY,
INC., et al., Defendants.**

Civ. A. No. 89–1772 (JHG).

United States District Court,
District of Columbia.

May 24, 1991.

E. Calvin Golumbic, R. Steven Holt, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiffs.

Michael A. Cleary, Alexander I. Saunders, Woods, Rogers & Hazlegrove, Roanoke, Va., pro hac vice, Charles D. Tetrault, Vinson & Elkins, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Plaintiffs Joseph P. Connors, Sr., Donald E. Pierce, Jr., William Miller, Thomas H. Saggau, and Paul R. Dean, as trustees of the United Mine Workers of America ("UMWA") 1950 Pension Plan and the United Mine Workers of America 1974 Pension Plan, initiated this action against defendants Hi–Heat Coal Company, Inc. ("Hi–Heat") and Shannon Coleman ("Shannon") and Dennis Coleman ("Dennis"), as partners of Russell Equipment Company ("Russell"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multi–Employer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 *et seq.* Plaintiffs seek to recover from defendants full withdrawal liability arising out of the termination of covered operations by Chestnut Ridge Mining Company ("Mining") and Chestnut Ridge Fuel Corporation ("Fuel") with respect to plaintiffs' 1950 and 1974 pension plans (the "Plans"). The parties have since filed cross motions for summary judgment.[1] For the following reasons,

---

1. In their initial pleadings, plaintiffs state that "[a]lthough the Plans brought suit against Hi–Heat Coal Company, Inc.... as a trade or business under common control of defendants, the Plans need further information regarding this company's operations and do not at this time pursue summary judgment against Hi–Heat." Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion"), at 6 n. 3. In their opposition to defendants' motion for summary judgment, however, plaintiffs suggest, "although the Trustees obtained information in their pre-filing investigation to indicate that Hi–Heat was a trade or business under common control with Mining, Fuel and Russell Equipment[,] ... depositions and documents produced during this litigation indicate that Hi–Heat was not under common control at the time of the withdrawal of Fuel and Mining in November 1985." Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment and in Further Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Opposition"), at 19–20. Nevertheless, plaintiffs contend that the Court should *not* grant summary judgment in favor of Hi–Heat because "they *may* obtain further information which would support a claim against Hi–Heat." Plaintiffs' Opposition, at 19 (emphasis added). Because plaintiffs have no factually supportable claim asserted against Hi–Heat in their complaint, defendants' motion for summary judgment as to defendant Hi–Heat is granted.

Defendants have also moved to amend their answer to allow additional defenses of statute of limitations and laches, principally because Hi–Heat ceased mining operations covered by the Plans in 1979, and this civil action was not commenced until 1989, well beyond the statute of limitations. The additional defenses, however, are meritless. In the instant case, the cause of action did not arise until defendants defaulted on the withdrawal liability payments in 1987, and thus, the six-year statute of limitations did not expire before this action was instituted. Moreover, it has been persuasively held that where "there is an applicable statute of limitations which has not yet expired, ... [a] defendant cannot rely on laches as a defense." *Combs v. Western Coal Corp.*, 611 F.Supp. 917, 920 (D.D.C.1985). In any event, because Hi–

plaintiffs' motion is granted in part and denied in part, and defendants' motion is granted in part and denied in part.

## I. BACKGROUND

Chestnut Ridge Fuel Corporation and Chestnut Ridge Mining Company, Inc. were Virginia corporations engaged in the business of producing coal and maintaining coal-mine sites. Both Fuel and Mining were signatories to the National Bituminous Coal Wage Agreements of 1978 and 1981. Pursuant to those agreements, Fuel and Mining were participating employers in the Plans and contributed to them on behalf of their employees.

Fuel permanently ceased covered operations under the Plans and ceased making contributions to the Plans in or around September 1984, and Mining permanently ceased covered operations under the Plans more than one year later, in November 1985. In May 1986, however, Fuel and Mining filed voluntary petitions for bankruptcy under Chapter 7 of Title 11 of the United States Code and thus, are not named as defendants in the instant case.

From September 27, 1980 until December 6, 1985, defendants Shannon and Dennis each owned 50 percent of the stock of Mining, and from October 23, 1982 until December 5, 1985, Fuel was wholly and equally owned by Shannon and Dennis. From April 17, 1984 until March 8, 1986, Shannon and Dennis conducted business as Russell Equipment Company,[2] a partnership which owns surface mining equipment, and were the only general partners of Russell, each owning a 50 percent partnership interest in that company.

By letters dated October 20, 1986, addressed to Dennis Coleman as president of "Chestnut Ridge Coal Company," rather than Chestnut Ridge Fuel or Chestnut Ridge Mining, the Plans notified defendants of the amount of liability in relation to the 1950 and 1974 Plans and demanded payment thereof. Specifically, the letters

advised of the amount of liability, established a schedule of payments, and indicated that the first payment to each Plan was due December 29, 1986. The letters further advised about the right to contest the Plans' determinations, as well as the liability of "controlled group" members.

The Plans again demanded payment by letters dated March 31, 1987 of all past due withdrawal liability payments, plus interest, and advised that unless all past due payments were made by June 9, 1987, the entire liability to the Plans would become due and payable without further demand. The second notice was also addressed to Dennis Coleman as president of "Chestnut Ridge Coal Company," rather than Chestnut Ridge Fuel or Chestnut Ridge Mining.

Defendants neither made withdrawal liability payments to the 1950 or 1974 Plans nor requested review of the Plans' liability determinations. Moreover, defendants did not demand arbitration under § 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1).

## II. DISCUSSION

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogato-

---

Heat is no longer a party to this action, the defenses raised in defendants' amendment are moot.

2. The mailing address of Russell, Mining, and Fuel was the same: P.O. Drawer F, Rosedale, Virginia 24280.

**4**

ries, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## A. NOTICE AND SERVICE

### 1. Notice

 Under 29 U.S.C. §§ 1382(2), 1399(b)(1), plaintiffs must notify defendants of the amount of their withdrawal liability and create a schedule for liability payments. Upon receiving a plan's decision, the employer may contest that decision by initiating arbitration under § 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1). Failure to initiate arbitration results in a waiver of any defenses that an employer may have concerning the fact and amount of withdrawal liability. *See Combs v. Adkins & Adkins Coal Co., Inc.,* 597 F.Supp. 122, 127–28 (D.D.C.1984). Moreover, notice of liability to one member of what is deemed to be a "controlled group" is treated as notice to all other members of the group who may be jointly liable. *See IUE AFL–CIO Pension Fund v. Barker & Williamson,* 788 F.2d 118, 126–27 (3d Cir. 1986).

 Because defendants failed to initiate arbitration, the Plans contend that defendants have waived all defenses in this case. Defendants do not explicitly dispute this contention. Rather, as a preliminary matter, defendants argue that plaintiffs failed to give defendants effective notice. Specifically, defendants contend that the notice required by the applicable statutes was provided by letters addressed to Chestnut Ridge Coal Company, an entity that is not affiliated with defendants.

Defendants' argument is unpersuasive. First, the letters were addressed to Dennis Coleman, so there is no doubt that he received actual notice of withdrawal liability. Moreover, the letters were sent to Dennis Coleman at P.O. Drawer F., Rosedale, Virginia, the same business address used by Mining and Fuel. In addition, the notices specifically explained that the withdrawal liability assessment was based on the contribution history of Chestnut Ridge Fuel,

Chestnut Ridge Mining, Hi–Heat Coal, and Chestnut Ridge Coal and further warned that all entities under common control are jointly and severally liable for withdrawal liability. Finally, in acknowledging receipt of the October 20, 1986 letters, John Lamie of Browning, Morefield and Lamie, counsel for defendants, wrote, "Please be advised that we have placed Chestnut Ridge Fuel, Inc. and Chestnut Ridge Mining, Inc. into Chapter 7 bankruptcy. I am not aware of a company called Chestnut Ridge Coal Company. Any further claim for withdraw of liability money should be addressed to the Trustee in these bankruptcy cases." Letter from John M. Lamie, Browning, Morefield and Lamie; to James Plutino, UMWA Health & Retirement Funds; dated December 2, 1986; attached as Exhibit 7 to Plaintiffs' Motion.

The undisputed, actual notice to defendants of the fact, amount, and basis for their withdrawal liability was plainly sufficient to satisfy the statutory requirements of ERISA and the due process clause. In comparable circumstances, the Court of Appeals for the Third Circuit rejected a defendant's contention that he did not receive proper notice when the defendant fully participated in the litigation from the outset and clearly had actual notice of the dispute. As the Court of Appeals characterized defendant's argument, "Even with the confusion between the names 'Meyer D. Mehrman' and "Sheldon Mehrman,' the December 28, 1981[ ] letter constituted proper legal notice to at least [Sheldon Hall Clothing].... [W]e find the argument disingenuous that Sheldon Mehrman had no notice of the controversy." *Trustees of the Amalgamated Insurance Fund v. Sheldon Hall Clothing, Inc.,* 862 F.2d 1020, 1024 & n. 4 (3d Cir.1988), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989).

### 2. Service

 Defendants next contend that because service was attempted in Virginia on a Sunday and because defendant Shannon resides in Florida and he was not served there in accordance with Rule 4 of the

Federal Rules of Civil Procedure, service of the complaint is void.

Although Virginia law generally precludes service on Sunday,[3] section 8.01–288 of the Virginia Code validates process that reaches a party even if there are technical defects in service. As the Virginia Code provides, "Except for process commencing actions for divorce or annulment of marriage or other actions wherein service of process is specifically prescribed by statute, process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter." Va.Code Ann. § 8.01–288. Defendants nowhere advance the argument that they never received actual notice of the suit.

Moreover, courts are generally reluctant to adopt technical interpretations of rules concerning service. As the Court of Appeals for the Fourth Circuit noted, "To the extent that there is any rule or guide to be followed by the federal courts in such a case it is that where actual notice of the commencement of the action and the duty to defend has been received by the one served, the provisions of Rule 4(d)(1) should be liberally construed to effectuate service and uphold the jurisdiction of the court, thus insuring the opportunity for trial on the merits." *Karlsson v. Rabinowitz,* 318 F.2d 666, 668 (4th Cir.1963). And as Wright & Miller suggest, "The general attitude of the federal courts is that the provisions of Rule 4 should be liberally construed in the interest of doing substantial justice and that the propriety of service in each case should turn on its own facts within the limits of the flexibility provided by the rule itself. This is consistent with the modern conception of service of process as primarily a notice-giving device." 4A C. Wright & A. Miller, *Federal Practice and Procedure* § 1083, p. 10 (1987) (footnotes omitted). There is no doubt that while

defendant Shannon may not have been served in his state of residence, he was apprised of the commencement of the instant action.

In any event, under Rule 4(h) of the Federal Rules of Civil Procedure, the Court has substantial discretion to allow amendment of service "unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued." Service in this action was, by no means, exemplary. Nonetheless, because defendants had actual notice of the suit, because the Court would have allowed amendment of service finding no material prejudice to defendants, and in the interests of justice and expediency, the Court will not dismiss the action against defendants on the basis of ineffective service.

## B. LIABILITY

■ Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), provides that, for purposes of withdrawal liability, "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."[4] Each trade or business that is a member of a controlled group is then jointly and severally liable for the withdrawal of any other member of the group.

■ Defendants do not argue that they are not members of a "controlled group" responsible for the withdrawal liability of Mining and Fuel. Rather, they contend, Russell is not a "trade or business" and therefore, cannot be held liable under ERISA. Specifically, defendants argue that Russell merely "held" equipment and did not lease equipment, Russell had no income, Russell did not have an office, and Russell had no employees.

---

**3.** *See* Va.Code Ann. § 8.01–289. The District of Columbia allows for service against non-residents and non-resident corporations by reference to the laws of the state in which those persons are found. *See* D.C.Code § 13–431. Consequently, Virginia law applies.

**4.** Pursuant thereto, the Pension Benefit Guaranty Corporation ("PBGC") prescribed regulations that incorporate by reference regulations promulgated by the Secretary of the Treasury under § 414(c) of the Internal Revenue Code of 1954. *See* 29 C.F.R. § 2612.

**6**

The factors that defendants cite are not determinative in deciding whether an entity is a trade or business within the meaning of ERISA. For example, it has been held that a company that does no more than hold and lease equipment may be a trade or business. *See Central States, Southeast & Southwest Areas Pension Fund v. Skyland Leasing Co.,* 691 F.Supp. 6, 11 (W.D.Mich.1987), *aff'd,* 892 F.2d 1043 (6th Cir.1990). And it is well settled that entities without employees may still constitute a trade or business. *See, e.g., Board of Trustees v. Lafrenz,* 837 F.2d 892, 894 (9th Cir.1988).

Moreover, Russell's unsigned tax returns for 1984, 1985, and 1986, provided in response to plaintiffs' discovery requests, flatly contradict defendants' contentions. Despite defendants' statements to the contrary, Russell reported earned income in both 1984 and 1985 and indicated that its principal business activity is equipment leasing. In addition, Russell filed an IRS form entitled "Gains and Losses from Sales or Exchanges of Assets Used in a Trade or Business and Involuntary Conversions." Moreover, Russell claimed deductions for property depreciation, and in order to deduct depreciation, the property must either be used in a trade or business or held for the production of income. In either event, Russell must either admit its status as a trade or business or assert that it held equipment for the production of income. Consequently, the Court finds that plaintiffs have sufficiently demonstrated that Russell is a trade or business subject to withdrawal liability as a member of the controlled group.

■ Finally, defendants argue that plaintiffs' claims must be dismissed since the 1950 Plan for which funds are sought are already fully funded.[5] In support of their argument, defendants point to 29 U.S.C. § 1381, which provides: "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability.... For purposes of subsection (a) of this section— ... [T]he withdrawal liability of an employer to a plan is the amount determined under section 1391 of this title to be the allocable amount of unfunded vested benefits ...." Defendants contend that the fact that the Plan has no "unfunded vested benefits" ("UVB") as of the year preceding the employer's decision immunizes the withdrawing employer from such liability under 29 U.S.C. § 1381.

Defendants' contention is unavailing. Section 1391 provides *several* complex formulas for computing withdrawal liability and nowhere indicates that "allocable amount" is to be based only on the UVBs as of the year preceding withdrawal when those UVBs have a value of zero. Accepting defendants' arguments would require this Court to ignore and disregard clear statutory language. As the Court of Appeals for the Fourth Circuit explained, "Because we construe the Employers' argument as an attempt to have us rewrite plain congressional language, we are compelled to reject their argument.... The language and logic of [the Multi–Employer Pension Plan Amendments Act ("MPPAA")] as a whole and MPPAA's legislative history ... support, rather than contravene, our decision to give effect to the statute's plain language.... Although we rest our decision most securely on MPPAA's plain language, logic, and legislative history, we derive additional assurance from the reasonableness, from the perspective of economic history, of consideration of plan health over a range of years, rather than at one discrete point in time." *Wise v. Ruffin,* 914 F.2d 570, 575, 580 (4th Cir.1990). *cert. denied sub nom., Almont Shipping Co., Inc. v. Ruffin,* —— U.S. ——, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991).[6]

5. Defendants further urge that if it is determined that the 1974 Pension Plan is also fully funded, summary judgment with respect to recovery under the 1974 Plan is likewise appropriate.

6. *But see Berkshire Hathaway, Inc. v. Textile Workers' Pension Fund,* 874 F.2d 53, 54–56 (1st Cir.1989) (PBGC's contention that liability should not attach where plan's vested benefits were fully funded is entitled to deference). The

## III. CONCLUSION

For the reasons expressed above, it is hereby

ORDERED that defendants' motion for leave to file an amended answer is granted; it is

FURTHER ORDERED that plaintiffs' motion for leave to file a supplemental memorandum in support of plaintiffs' motion for summary judgment is granted; it is

FURTHER ORDERED that defendants' motion for summary judgment is granted in part; it is

FURTHER ORDERED that defendants' motion for summary judgment as to defendant Hi–Heat is granted; it is

FURTHER ORDERED that plaintiffs' motion for summary judgment is granted in part; it is

FURTHER ORDERED that plaintiffs' motion for summary judgment is granted as to defendants Dennis Coleman and Shannon Coleman, doing business as partners of Russell Equipment Company.

IT IS SO ORDERED.

PBGC has subsequently announced the withdrawal of a December 1986 notice and has stated that employers may incur withdrawal even though the plan has no unfunded vested benefits.