**Mary Ann BIDDULPH, Plaintiff,**

v.

**John J. CALLAHAN, Acting Commissioner of the Social Security Administration, Defendant.**

**Civil Action No. 96–0127(JHG).**

United States District Court,
District of Columbia.

March 30, 1998.

Wayne Hayden Matelski, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Plaintiff.

Mary Ann Biddulph, Wynnum, Queensland Australia, pro se.

Dara A. Corrigan, Washington, DC, Bruce R. Hegyi, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff Mary Ann Biddulph ("Biddulph") challenges the determination of the Commissioner of the Social Security Administration ("the Commissioner") that she is ineligible for Retirement Insurance Benefits under Section 202 of the Social Security Act, 42 U.S.C. § 402. This case turns on whether the income Biddulph earned from babysitting, taking in boarders, baking, and sewing from her residence in Australia qualifies as earnings from operation of a trade or business. The Commissioner applied the wrong legal standard when he determined that Biddulph's income-producing activities were not a trade or business. Additionally, his conclusion that Biddulph had not accurately reported the amount of her earnings is not supported by substantial evidence. For these reasons, the decision of the Commissioner must be reversed.

### BACKGROUND

Mary Ann Biddulph is a 71-year-old United States citizen, born on February 9, 1927, who pursued a career of nursing and missionary work primarily in India and New Guinea. She currently resides in Queensland, Australia.

#### A. First Application for Retirement Insurance Benefits

While living in Australia, she filed her first application with the Commissioner for Retirement Insurance Benefits on May 31, 1991. See Administrative Record ("AR") at 71. On August 5, 1991, the defendant agency made an initial determination that Biddulph was not insured under the Social Security Act, and therefore was not entitled to old age benefits. According to the agency, Biddulph's earnings history showed that she had only acquired 35 of the 38 "quarters of coverage" needed to qualify for benefits. AR at 75 (Letter of Joseph R. Muffolett, Office of Disability and International Operations, dated August 5, 1991). In the same letter, she was told: "You should apply again if you earn the additional credit you need." Id. She was also advised of her rights to appeal. Id.

One of the reasons that Biddulph was determined to have lacked sufficient quarters is that from 1952 to 1957, she served as a missionary nurse in India under the sponsorship of the Church of the Nazarene, Kansas City, Missouri. Biddulph was under the impression that during those years the Church was paying social security tax on her behalf. It appears that Biddulph was mistaken, and she received no credit for any of the quarters during those years. AR at 69, 104–05, 108–110.

Biddulph took at least two steps in response to this initial determination. First, she promptly requested reconsideration. AR at 77 (Biddulph's letter of August 20, 1991 with attachments). Second, although 65 years of age (as of 1992) and in failing health,[1] she began a business out of her home in order to gain more credits. AR at 88 (letter of April 17, 1993).

On February 17, 1993, the defendant, after reconsideration, affirmed the disallowance of her claim. AR at 83–85 (Letter of Joseph R. Muffolett). Biddulph then requested review by the SSA Office of Hearings and Appeals. On January 25, 1994, the Administrative Law Judge ("ALJ") reviewing the case denied her appeal. AR at 65. In each step of the process, the defendant agency determined that under the applicable law, 42 U.S.C. §§ 413–414, Biddulph had earned only 35 quarters of covered work—three short of the 38 quarters required for persons of Biddulph's age.

---

1. The record does not reflect whether Biddulph submitted evidence of a disability under 20 C.F.R. Part 404, subpart P, which could affect the "quarters of coverage" determination pursuant to 20 C.F.R. § 404.110(c).

### 1. Final Appeals Council Decision

In the final step of the administrative process, Biddulph sought review from the Appeals Council in April 1994. AR at 63. By letter dated November 10, 1994, the Council informed Biddulph that "[a]bsent new and material evidence or pertinent legal argument" it was prepared to grant Biddulph review limited to increasing her coverage from 35 to 36 quarters of coverage based on a reevaluation of her earnings in 1959. AR at 112–13, 98–99.

By letter dated November 26, 1994, Biddulph asserted that, in the interval between filing her application and receiving the Appeals Council's November 1994 letter, she had earned additional quarters of coverage. AR at 114. While she had previously indicated to the agency that she had filed a 1992 tax return that reflected self-employment income, AR at 88, it was only with her November 26, 1994 letter that she enclosed copies of her 1992 and 1993 federal income tax returns. These reflect taxes paid on $1,724 and $2,291, respectively, in gross receipts from self-employment. AR at 114–125.

The Council, after considering the tax returns as evidence of self-employment income, refused to credit Biddulph with any additional quarters of coverage for 1992 or 1993. The Council stated:

> In questionable cases, the Social Security Administration is not only privileged but is obligated to look behind the form of self-employment tax returns which an individual has filed. It is the actual receipt of self-employment income, not the reporting or payment of taxes thereon, which is the crucial test for establishing a valid claim (Social Security Ruling 70–55c . . .). The claimant has submitted no information regarding the specifics of her purported self-employment income which would allow the Appeals Council to determine whether such income was the result of her operation of a *bona fide* trade or business, or the amount of her net earnings from self-employment (i.e., there is no explanation regarding why the claimant did not have any expenses in connection with the operation of her purported business) (20 CFR 404.1007(c) and 20 CFR 404.1006).

AR at 62. The Council did not specify why it considered Biddulph's to be a "questionable case."

### 2. Appeals Council Decision on Reconsideration

On April 19, 1995, Biddulph sent the Council additional supporting documents to verify her receipt of income during 1992 and 1993, including a cash book reflecting income received, a summary of business expenses, and copies of receipts. AR 7–53. These records reflect income principally from periodic babysitting for the child of a person named Fran Pedro and from providing room and board to Ms. Pedro and/or her child, as well as providing room and board to others on a few occasions. Biddulph also earned income from baking two birthday cakes and from occasional sewing projects, including the two-and-a-half months spent on sewing a quilt, for which she was paid $ 1,000. *See* AR at 9–18.

The Council treated Biddulph's submission as a request to reopen its decision. On June 19, 1995, after describing the additional information submitted by Biddulph, the Council again denied Biddulph's application for benefits because:

> The Appeals Council finds that this information is not sufficient to find that you received self-employment income in 1992 or 1993 or that you acquired additional quarters of coverage. The additional information does not show that you were engaged in a *bona fide* trade or business baking or sewing because you only made two cakes and only sewed on an occasional basis. The additional information does not show that you held yourself out to the public as a babysitter or as running a boarding house or that you advertised as such; therefore it does not show that you were engaged in a *bona fide* trade or business in connection with these services. Further in the operation of a babysitting business or a boarding house, there are usually expenses in connection with the businesses, such as electricity, heat, water, insurance, laundry, etc. You did not list any such expenses in determining the amount of your net remuneration (20 CFR

404.1007(c) and Social Security Ruling 89–2a . . .).

AR at 3 (citation omitted). The Council concluded that it would not reopen its prior ruling and stated that "the Appeals Council's decision of March 1, 1995 stands as the final decision of the Commissioner." AR at 3.

## B. Second Application for Retirement Insurance Benefits

During the pendency of the administrative review of her first claim for benefits, Biddulph filed a second claim for benefits on July 1, 1994, at the American Consulate in Brisbane, Queensland, Australia. AR at 168–71. Biddulph's second application included copies of her individual income tax returns for the years 1992 and 1993. AR at 143–61.

The agency's left hand appears not to have known what its right was doing because Biddulph's earnings record, produced on November 3, 1994, and obtained by the International Program Service Center of the Social Security Administration ("SSA International Center"), reflects self-employment income for 1992 and 1993. *See* Def. Ex. A, Declaration of Martha C. Ulken ¶¶ 6–7 & AR at 138–40. With this income, Biddulph had acquired more than enough quarters of coverage.

On November 21, 1994, defendant awarded the second claim for benefits and sent Biddulph a notice to that effect. In March 1995, the SSA's Office of International Operations ("OIP"), located in Baltimore, Maryland, appears to have become aware of the Appeals Council's decision refusing to credit Biddulph with self-employment income for 1992 and 1993 and holding that she had not acquired sufficient quarters to be fully insured. On a fax cover sheet to the American Consulate in Australia, an employee of the OIP wrote that "[b]ased on a review of the file and the Appeals Council decision dated 03/01/95, the claimant's 1992 and 1993 SEI should be removed." AR at 132. Subsequently, the agency suspended payments on Biddulph's second claim effective September 1995. AR at 127–28.

## C. Filing of the Instant Action

On January 29, 1996, Plaintiff commenced this action to review the denial of her first claim by filing her Complaint *pro se*. Defendant answered in June 1996, filing only a partial administrative record. The Court ordered that the entire record be filed and served on Biddulph, and informed Biddulph that she could request appointment of counsel pursuant to Local Rule 702.1(a)(5). Biddulph did request appointment of counsel, and on February 14, 1997, the Court granted the request. Biddulph's counsel entered his appearance on April 11, 1997.[2]

## DISCUSSION

### A. The Social Security Act

The Social Security Act provides for benefits to be paid to retirees in an amount, based in part, on prior and current earnings. 42 U.S.C. §§ 402(a), 415(a)(1)(A), 415(f)(2) (1994 & Supp.). To qualify for benefits, a retiree must have earnings that translate into a sufficient number of "quarters of coverage" as calculated by the formula set forth in 42 U.S.C. §§ 413, 414 (1994 & Supp.). Quarters of coverage are determined by the amount of earnings reflected for an individual in the agency's records.

Prior to 1950, self-employed individuals were not covered by Social Security because there was no agreement on a feasible method for obtaining reports of their income. *See Shore v. Califano*, 589 F.2d 1232, 1237 (3d Cir.1978) (discussing extensively the legislative history regarding coverage of self-employed individuals). In 1950, Congress reached agreement that creation of a separate social security schedule to the federal income tax forms on which self-employment income would be reported was a practical, administratively feasible method for extending Social Security to the self-employed. *See* S.Rep. No. 1669, 81st Cong., 2d Sess., *reprinted in* U.S.C.C.A.N. 3287, 3299 (1950).

Consequently, the Commissioner is required to keep records of past earnings of

---

**2.** The Court appreciates Mr. Matelski's public service in accepting the appointment and in affording Ms. Biddulph able representation.

self-employed individuals for the purpose of determining eligibility. 42 U.S.C. § 405(c)(2)(A). The relationship between self-employment income reported to the Internal Revenue Service and self-employment income kept in the Commissioner's records is closely linked, but they are not necessarily mirror reflections. *See* 20 C.F.R. § 404.1001(c).

### 1. "Self–Employment Income" Under the Act

The Commissioner is obliged to keep records of "self-employment income," which is a packed term. "Self-employment income" means "the net earnings from self-employment derived by an individual ... during any taxable year beginning after 1950 ...." 42 U.S.C. § 411(b). "Net earnings from self-employment," in turn, means "the gross income ... *derived by an individual from any trade or business carried on by such individual,* less the deductions allowed...." *Id.* § 411(a) (emphasis added), where "trade or business" has the same meaning as it does under Section 162 of the Internal Revenue Code ("IRC"). 42 U.S.C. § 411(c); 20 C .F.R. § 404.1066 (1997). However, the term "trade or business" is undefined in the IRC.

In this case, in its March 1, 1995 and June 19, 1995 decisions, the agency held, without reference to the controlling statute, that whatever monies Biddulph may have received in 1992 and 1993, they did not constitute "self-employment income" for Social Security purposes because: (1) the Appeals Council did not believe the money had come from operation of a "trade or business;" and (2) the Appeals Council did not accept the amount of income reported on Biddulph's tax return to be the amount of income she actually received. AR at 3, 62. It is those decisions that give rise to this action.

### 2. Standard of Review

This Court's review of the Commissioner's decision is provided for by the Act, which states in pertinent part:

Any individual, after any final decision of the Commissioner ... may obtain a review of such decision by a civil action.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for rehearing. The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive....

42 U.S.C. § 405(g); *see also* 42 U.S.C. § 405(c)(9). Of course,

Conclusions of law are not entitled to deference, however, so if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings.

*Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *accord* Cornelius v. Sullivan, 936 F.2d 1143, 1145–46 (11th Cir.1991).

### 3. The Standards Applicable to Biddulph's Application

It is not clear whether Biddulph's challenge is limited to the Appeals Council's decision not to credit her with self-employment income for 1992 and 1993 or whether she also seeks to challenge the determination that prior to 1992 she had only obtained 36 quarters of coverage. With respect to the latter determination, extensive discussion is not required; that aspect of the Commissioner's decision is affirmed because it is supported by substantial evidence in the record.

With respect to the decision on 1992 and 1993 income, it must be reversed because the Appeals Council, in part, applied an incorrect legal standard in evaluating the evidence submitted by Biddulph and, in part, even to the extent that the Council's standard was correct, its factual findings are not supported by substantial evidence.

### 4. The Meaning of Net Earnings Derived from Operation of a Trade or Business

Because "self-employment income" is the amount of net earnings derived from operation of a trade or business, the Commissioner is correct in his brief when he asserts that this case turns on whether the income reported on Biddulph's tax returns was derived from operation of a trade or business. The

term "trade or business" is undefined by statute, but the parties agree that the Supreme Court's authoritative construction of the term, as used in 26 U.S.C. § 162, controls in this case. According to the Court:

> The income tax law, almost from the beginning, has distinguished between a business or trade, on the one hand, and "transactions entered into for profit but not connected with ... business or trade," on the other.... Congress "distinguished the broad range of income or profit producing activities from those satisfying the narrow category of trade or business."
> .... We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify.

*Commissioner v. Groetzinger,* 480 U.S. 23, 35, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987) (holding that a full-time gambler was engaged in a "trade or business") (internal citations omitted).

■ Under the two-pronged *Groetzinger* standard, to be engaged in a trade or business one must engage in an activity: (1) with an intent to profit; (2) on a regular and continuous basis. *Connors v. Incoal, Inc.,* 995 F.2d 245, 255 (D.C.Cir.1993) (Silberman, J., concurring in the judgment). Of the two prongs, the principal emphasis is on the intent to profit.[3]

■ The agency is obliged to apply this legal standard when considering whether an activity is a "trade or business," but the ultimate determination of whether an activity

is a "trade or business" is a question of fact. *See Groetzinger,* 480 U.S. at 36; *see also Incoal,* 995 F.2d at 251; *Lessin v. Celebrezze,* 314 F.2d 283, 284 (D.C.Cir.1963); *cf. Connors v. Hi–Heat Coal Company, Inc.,* 772 F.Supp. 1, 5 (D.D.C.1991).

Although the Commissioner, in his brief, defends his result with reference to the *Groetzinger* standard, the Appeals Council ignored the *Groetzinger* framework and instead relied on regulations that conflict with that decision. It is true that the Commissioner's interpretation of his own regulations is entitled to substantial deference by this Court, but by arguing under *Groetzinger* in his brief, the Commissioner has essentially conceded that the Council erred when it relied on 20 C.F.R. § 404.1007(c) to support its finding that Biddulph was not engaged in a trade or business. *See* AR at 3, 62.

### 5. By Its Terms Section 404.1007(c) Does Not Apply

■ Section 404.1007(c) is part of the regulations defining "employment" under the Social Security Act rather than "self-employment." Section 404.1007 is entitled "Common Law Employee" and it makes explicit that the common law distinction between employees and self-employed independent contractors, while relevant to the Social Security Act, is not identical to the statutory division. *Id.* § 404.1007(a). Understood in context, the "Factors that Show Self–Employed Status" in § 404.1007(c) are the Commissioner's statement of the *common law factors* of self-employment rather than the statutory definition of self-employment.[4] These factors are used to evaluate whether one is an *employee*

---

3. *Portland Golf Club v. Commissioner of Internal Revenue,* 497 U.S. 154, 164, 110 S.Ct. 2780, 111 L.Ed.2d 126 (1990) ("[a]lthough the statute [the IRC] does not expressly require that a 'trade or business' must be carried on with an intent to profit, this Court has ruled that a taxpayer's activities fall within the scope of § 162 only if an intent to profit has been shown."); *see also Professional Ins. Agents of Mich. v. Commissioner,* 726 F.2d 1097, 1102 (6th Cir.1984) ("It is well established that the existence of a genuine profit motive is the most important criterion for the finding that a given course of activity constitutes a trade or business.").

4. The factors are:

(1) You make a profit or suffer a loss.
(2) You are hired to complete a certain job and if you quit before the job is completed you may be liable for damages.
(3) You work for a number of persons or firms at the same time.
(4) You advertise to the general public that you are available to perform services.
(5) You pay your own expenses and have your own equipment and work place.
20 C.F.R. § 404.1007(c).

under the Act. *See, e.g., Fifer v. Sullivan,* 1992 WL 103687 *11–12 (W.D.Va.1992).

Indeed, in Social Security Ruling 89–2a, which the Appeals Council cited in support of its decision in this case, the issue was whether a secretary for a church had been an employee or was self-employed. The Council determined that under § 404.1007(c), the secretary was an employee. That analysis is unrelated to Biddulph's case. There is no suggestion that Biddulph may have been anyone's employee in 1992 or 1993. The only issue is whether the income she derived as a self-employed person was "self-employment income" because it was derived from operation of a trade or business.

Separately, the Commissioner has promulgated regulations that track the statute in defining when one has earnings from "self-employment," which requires income from a "trade or business." *See* 20 C.F.R. § 404.1066. Determining whether an applicant is engaged in a trade or business requires application of the *Groetzinger* test, which the Council ignored by its reliance on 20 C.F.R. § 404.1007(c).[5]

Even if the factors in § 404.1007(c) have a place in the statutory inquiry of whether an applicant has self-employment income derived from a trade or business, the Council did not make any findings about the first three factors, numbers one and three of which tip in Biddulph's favor. Instead, the basis of the Council's June 19, 1995 decision not to reopen its earlier decision relies principally on its finding, under the fourth factor, that she had not "held [herself] out to the public as a babysitter or as running a board-

ing house or that you advertised as such." AR at 3.

**6. Section 404.1007(c) Conflicts with Groetzinger**

■ Reliance on the fourth factor of § 404.1007(c) in determining whether one has received net earnings from operation of a trade or business is particularly inappropriate. In *Groetzinger* the Court explicitly rejected it. To support its holding that a full-time gambler was engaged in a trade or business, the *Groetzinger* Court traced at length the history of the Court's prior pronouncements on the meaning of "trade or business" in Section 162 of the IRC. Significantly, the history included extensive discussion of the so-called "Frankfurter gloss" from Justice Frankfurter's concurrence in *Deputy v. du Pont,* 308 U.S. 488, 499, 60 S.Ct. 363, 84 L.Ed. 416 (1940) ("carrying on any trade or business within the contemplation of [ § 162] involves holding one's self out to others as engaged in the selling of goods or services.") (Frankfurter, J., concurring) (quoted in *Groetzinger,* 480 U.S. at 29). After considering whether the "holding out" inquiry would be helpful in defining "trade or business," the *Groetzinger* Court concluded it would not: "We therefore now formally reject the Frankfurter gloss which the Court has never adopted anyway." *Groetzinger,* 480 U.S. at 34.

Moreover, assuming *arguendo* that even after *Groetzinger* the Commissioner can rely on the "holding out" factor in § 404.1007(c), pre-*Groetzinger* precedent makes clear that holding oneself out to even a very limited universe of customers satisfies the inquiry.[6]

---

**5.** The March 1, 1995, decision also cites 20 C.F.R. § 404.1006 (which deals with treatment of officers of corporations). AR at 62. The Court assumes this to be a typographical error and assumes the intended reference was § 404.1066. However, nothing in the Council's very brief statement of reasons for its decision reflects reference to the statute or the *Groetzinger* standard. The Council's discussion is framed entirely in § 404.1007(c) terms.

**6.** *See Hollohan v. Heckler,* 805 F.2d 143, 145 (6th Cir.1986) ("we do not adopt the defendant's argument that one cannot be engaged in a trade or business if working or rendering services for only one customer"); *Gajewski v. C.I.R.,* 723 F.2d 1062, 1066 (2d Cir.1983); *Grosswald v. Schweik-*

er, 653 F.2d 58, 61 (2d Cir.1981) ("It makes little sense to distinguish between a person who 'holds himself out' to only one employer and a person who 'holds himself out' to more than one employer."); *McDevitt v. Harris,* 498 F.Supp. 58, 60–62 & n. 4 (E.D.Pa.1980) (babysitting for grandchild was "trade or business" even though grandmother did not advertise to others, did not hold herself out to others, and did not deduct business expenses); Social Security Ruling 82–17c (incorporating *Grosswald* ); *see also Bayles v. Folsum,* 157 F.Supp. 866, 868–70 (N.D.W.Va. 1958) (executrix responsible for investing and handling estate's money engaged in a "trade or business").

Finally, courts applying the *Groetzinger* standard make clear that it is a flexible one that can encompass a broad range of profit-making activities. *E.g., Barry v. Shalala,* 840 F.Supp. 29, 32–33 (S.D.N.Y.1993) (full-time panhandler engaged in a trade or business). *But see Moynihan v. Shalala,* 834 F.Supp. 1066, 1072–74 (N.D.Ind.1993) (ignoring *Groetzinger* and applying a 1964 Social Security Ruling in holding that neither plaintiff's "management" of parents' farm nor his sale of blood plasma constituted a "trade or business").

### B. Whether Biddulph Was Engaged in a Trade or Business

When reviewed under the proper legal standard, the Commissioner's finding that Biddulph was not engaged in a trade or business cannot be sustained. With respect to the first prong of the *Groetzinger* standard—an intent to profit—the Appeals Council must have accepted that Biddulph baked, sewed, babysat and took in boarders as she claimed she did, and that she did so with an intent to profit, for there is no evidence to the contrary in the record and no question raised on this point by the Appeals Council. Moreover, the record reflects that Biddulph's motivation to engage in these activities was to earn income sufficient to earn additional quarters of coverage, AR at 88, as the agency had invited her to do. AR at 75.

 With regard to the second element,— whether the activity is regular or continuous—the Council appears to have given this factor some consideration when it stated that "the additional information does not show that you were engaged in a *bona fide* trade or business baking or sewing because you only made two cakes and only sewed on an occasional basis." AR at 3. However, this statement reflects a legal error because the Council required Biddulph to show that she could independently meet the regularity and continuity requirement for each individual service she provided (e.g., baking, sewing, babysitting, taking in boarders).

The *Groetzinger* Court did not provide specific guidance on how narrowly the "activity" under consideration must be defined when determining whether it is a trade or business. But the function of defining "trade or business" is to separate one's "personal" activities or one-time, or even occasional, commercial transactions from one's non-investment, regular commercial activities. *See Groetzinger,* 480 U.S. at 35–36. To achieve this goal, it is not necessary to parse the commercial services provided to the finest degree possible. If activities engaged in with an intent to profit are sufficiently related, either by the type of goods sold or the type of services provided, they can be aggregated as a single "activity" to determine whether the regularity or continuity prong of the *Groetzinger* standard is satisfied.

 This is not to say that applicants can aggregate any assortment of activities under the most general of rubrics to qualify as a trade or business. A close nexus is required. Here, the services provided by Biddulph are similar in kind in that they are personal services or domestic services provided to others, rendered from the same premises (her residence), and involving skills all related to the running of a household. In this case, the services are sufficiently related, and the Appeals Council should have considered whether, when aggregated, they were offered on a regular and continuous basis. Indeed, in its initial denial of Biddulph's claim, the Council appears to have aggregated these. *See* AR at 61 (Biddulph's contention was that she received self-employment income "by providing personal services such as 'Bed/Breakfast, Baby–Sitting, Sewing and Meals' "). Remand is not necessary on this point because the record evidence demonstrates that over the period in question, Biddulph provided these services on a regular and continuous basis.

### C. Whether Biddulph Received the Income She Alleges

When Congress extended Social Security to self-employed individuals, it made clear that reliance on federal income tax returns would be the central means by which the Commissioner would determine self-employment income. *Shore,* 589 F.2d at 1237. Nonetheless, the Commissioner may require such verification as he deems necessary be-

fore including self-employment income in his records. 42 U.S.C. §§ 405(a), (c)(2)(A).

The agency has promulgated certain regulations that constrain its discretion in evaluating whether evidence submitted, including evidence of actual receipt of income, is satisfactory. The agency must consider whether:

(a) Information contained in the evidence was given by a person in a position to know the facts;

(b) There was any reason to give false information when the evidence was created;

(c) Information contained in the evidence was given under oath, or with witnesses present, or with the knowledge there was a penalty for giving false information;

(d) The evidence was created at the time the event took place or shortly thereafter;

(e) The evidence has been altered or has any erasures on it; and

(f) Information contained in the evidence agrees with other available evidence, including our records.

20 C.F.R. § 404.708.

While the Appeals Council makes no explicit mention of any of these criteria in its assessment of Biddulph's business records, it appears to have accepted Biddulph's representations as to the amount of her gross receipts for 1992 and 1993. Under these criteria it would have to—absent contrary evidence in the record. However, the Appeals Council did not accept Biddulph's figures as reflecting the income actually received because the figures on the tax returns reflect gross receipts.

The statute defines "self-employment income" as the *net* earnings from the operation of a trade or business, and in both decisions, the Council expresses concern that it could not determine her net earnings because no expenses were reported. *See* AR at 3, 62. Biddulph did supply an estimate of direct expenses amounting to a total of $49.94 for 1992 and $13.32 for 1993. In its June 1995 opinion, the Council does not challenge the accuracy of those figures, but the Council persisted in refusing to accept Biddulph's report as accurately reflecting her net earnings because she did not also deduct indirect

expenses such as electricity, heat, water, insurance, etc. AR at 3.

The Appeals Council found that Biddulph's purported receipt of self-employment was not accurate enough for it to determine quarters of coverage. If that finding is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g).

The substantial evidence test "requires not the degree of evidence which satisfies the court that the requisite fact exists, but merely the degree that could satisfy a reasonable fact finder. . . . This is an objective test, and there is no room within it for deference to an agency's eccentric view of what a reasonable factfinder ought to demand." *Allentown Mack Sales and Service, Inc. v. National Labor Relations Board*, —— U.S. ——, ——, 118 S.Ct. 818, 828, 139 L.Ed.2d 797 (1998). The Council's finding fails this test.

■ First, the foundation for the Council's decision is its unsupported finding that Biddulph's was a "questionable case" that required additional scrutiny. *See* AR at 62. While, of course, the agency has an obligation to protect the integrity of the benefits program it administers, it may not confuse an applicant's incentive to earn additional quarters of coverage with an incentive to falsely report self-employment income to the agency. *See Gardner v. Heckler*, 777 F.2d 987, 991 (5th Cir.1985) ("We have exhaustively searched and have not found a case . . . which suggests that it is proper for the Secretary to disregard business records when there is no evidence negating their genuineness merely because the Social Security applicant had hopes of receiving benefits . . .").

*Gardner* is instructive because there the applicant seeking to establish eligibility for disability benefits produced business records similar to those produced by Biddulph. The Administrative Law Judge ("ALJ") received live testimony from the applicant, which he found to be "vague, hesitant, inconclusive, and inconsistent." *Gardner*, 777 F.2d at 990. He also received an affidavit from the applicant's accountant. The ALJ found that plaintiff's amended tax return did not accurately reflect his income. The Fifth Circuit reversed, holding that no substantial evi-

dence supported the ALJ's findings and that "the only basis for the ALJ's denial of insured status to Gardner was his belief that Garnder's primary motivation for filing his 1977 amended return was to collect social security benefits." *Id.* (footnote omitted).

To the extent that the Appeals Council's decision not to accept the income as reported on Biddulph's tax returns was based on its initial finding that hers was a "questionable case," that determination is unsupported by substantial evidence. *Gardner* makes clear that the mere fact that Biddulph was motivated to earn income so that she could attain insured status is an illegitimate basis for considering her records to be suspect.

■ Second, assuming *arguendo* that the Council appropriately demanded additional verification from Biddulph, the information she supplied was sufficient under the agency's regulations. *See* 20 C .F.R. § 404.708. This is not a case where the agency has resolved conflicting evidence in deciding not to credit Biddulph with self-employment income as reflected on her income tax returns.[7]

For example, the Commissioner relies in his brief on *Matta v. Secretary of Health and Human Services*, 806 F.2d 287, 290 (1st Cir .1986). But in *Matta,* the evidence before the Commissioner was quite different. As the court stated: "Given claimant's conflicting statements, her vague testimony, and the lack of even the most rudimentary business records to back up the claim of self-employment earnings" the decision that plaintiff had not received self-employment income was supported by substantial evidence. *See id.* at 289. Similarly, in the other case relied upon by Commissioner, *Betancourt v. Secretary of Health and Human Serv.,* plaintiff lacked business records and had supplied contradictory statements regarding his self-employed status. 754 F.Supp. 7, 10 (D.Puerto Rico 1991). Finally, Social Security Ruling 70–55c, on which the Appeals Council relied, incorporates a court decision from a case

where the agency undertook to interview alleged customers of the applicant, who was a self-employed seamstress, and found it could not corroborate her reconstructed and rudimentary business records. *See* Social Security Ruling 70–55c (incorporating *Hernandez v. Secretary of Health, Education and Welfare,* 307 F.Supp. 338 (D.Puerto Rico 1969)).

Here, no evidence in the record conflicts with Biddulph's fairly detailed business records. Also, while it was not required to, the agency made no effort to interview Biddulph's customers through the American Consulate, unlike in the cases cited above. She has supplied the necessary quantum of proof to support her claim of self-employment income, including a statement of expenses, and there is no legitimate basis for the Commissioner to discredit her records. *See* 20 C.F.R. § 404.708; *Gardner,* 777 F.2d at 990. Therefore, the Commissioner's finding that Biddulph's records fail to substantiate her claim of the amount of self-employment income earned is unsupported by substantial evidence and is reversed.

### D. Section 405(c)(4)(C) is Inapplicable

While it has been established that this case turns on whether Biddulph derived her income from operation of a trade or business, her principal argument in her opening brief was that the Commissioner failed to consider 42 U.S.C. § 405(c)(4)(C), which, Biddulph argues, required the Commissioner *as a matter of law* to credit her with the income reported on her tax returns. However, that section is inapposite on the facts of this case.

The provisions of the Social Security Act that govern challenges to the Commissioner's records provide differing treatment depending upon whether the challenge is brought before or after the statutory time limitation of three years, three months and fifteen days set forth in 42 U.S.C. § 405(c)(1)(B).

7. *See Nieves v. Secretary of Health and Human Services,* 1993 WL 126029 (D.Puerto Rico Jan.28, 1993) (applying 20 C.F.R. § 404.708 and affirming denial of benefits where agency resolved conflicting evidence). While the "substantial evidence" standard remains the same whether or not the agency has conducted evidentiary hearings, the Court notes that even when agency personnel have made credibility judgments based on live testimony, those findings will be reversed if not supported by the record. *See, e.g., Shirley v. Bowen,* 635 F.Supp. 132, 134–35 (D.D.C.1986).

### 1. Prior to the Expiration of the Time Limitation

The Commissioner retains broadest discretion to respond to challenges brought before the expiration of the time limitation, to wit:

Prior to the expiration of the time limitation following any year the Commissioner of Social Security *may,* if it is brought to the Commissioner's attention that any entry of wages or self-employment income for such year is erroneous or ... has been omitted from such records, correct such entry or include such omitted item in the Commissioner's records, as the case may be. . . . .

42 U.S.C. § 405(c)(4) (emphasis supplied).

### 2. After the Expiration of the Time Limitation

In cases where the statutory time period has expired, the provisions are somewhat confused and potentially internally inconsistent. Following the above-quoted passage, Section 405(c)(4) continues:

After the expiration of the time limitation following any year—

. . . .

. . . .

(C) the absence of an entry in the Commissioner's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such an individual in such year *unless* it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year, in which case the Commissioner of Social Security *shall* include in the Commissioner's records the self-employment income of such individual for such year.

42 U.S.C. § 405(c)(4)(C) (emphasis supplied).

The mandatory air of this provision is clouded by § 405(c)(5)(F), which provides that:

After the expiration of the time limitation following any year in which wages were paid or alleged to have been paid to, or self-employment income was derived or alleged to have been derived by, an individual, the Commissioner of Social Security *may* change or delete any entry with respect to wages or self-employment income in the Commissioner's records of such year for such individual or include in the Commissioner's records of such year for such individual any omitted item of wages or self-employment income *but only —*

. . . .

(F) to conform the Commissioner's records to—

(i) tax returns or portions thereof (including information returns and other written statements) filed with the Commissioner of Internal Revenue under Title VIII of the Social Security Act. . . .

42 U.S.C. § 405(c)(5)(F) (emphasis supplied).

Biddulph relies on authority from the Second and Sixth Circuits, which have resolved the potential conflict between the mandatory and permissive language of these provisions to mean that § 405(c)(5)(F) grants the Commissioner the power to amend his records of self-employment income, if an error is brought to his attention after the time limitation has expired, and § 405(c)(4)(C) requires the Commissioner to exercise that power to include in his records self-employment income that appears on a timely filed income tax return. *Jabbar v. Secretary of Health and Human Services,* 855 F.2d 295, 297–98 (6th Cir.1988); *Hollman v. Department of Health and Human Services,* 696 F.2d 13, 16 (2d Cir.1982).

By contrast, the First Circuit has held that when the Commissioner receives a timely filed tax return reflecting self-employment income after the expiration of the statutory time limitation, he retains the discretion not to include the income in the agency's records. *Matta,* 806 F.2d at 290. Not surprisingly, the Commissioner has adopted the First Circuit's interpretation. *See* 20 C.F.R. §§ 404.803(c)(3), 404.822(b)(2)(i).

But § 405(c)(4)(C) does not apply in this case for two reasons. By its terms, § 405(c)(4)(C) applies in situations in which the Commissioner learns of the alleged self-employment income only after the time limitation has expired. In this case, Biddulph

filed her application for benefits in 1991, before she had even earned the income in question. It was during the pendency of the administrative process that she filed her tax returns and brought them to the Commissioner's attention. Under the language of the statute, the agency retained the discretion whether to include the income reported on Biddulph's tax returns in the agency's records. *See* 42 U.S.C. § 405(c)(4).

It is true that under the interpretation given by the Second and Sixth Circuits, Biddulph would have had an incentive to wait until the expiration of the time limitation to file her claim, for then the Commissioner would have been required to include the income on her tax returns in his records without question.[8] But that is not what happened in this case, so there is no need to decide which side of the circuit split has the better interpretation of § 405(c)(4)(C).

Second, and more fundamentally, the Commissioner's decision rested not on whether there was self-employment income that he chose not to include in his records but on whether the income reported on Biddulph's tax returns even qualified as "self-employment income" within the meaning of the Social Security Act. As has been discussed, the Appeals Council's decision that Biddulph did not have "self-employment income" must be reversed because the Council applied the wrong legal standard and relied on a finding of fact that is unsupported by substantial evidence.

### CONCLUSION

Accordingly, upon consideration of the entire record in this matter and for the reasons stated, it is hereby

**ORDERED** that plaintiff's motion for a judgment reversing the March 1, 1995, and June 19, 1995, decisions of the Appeals Council is GRANTED; and it is

**FURTHER ORDERED** that defendant's motion for a judgment of affirmance is DENIED; and it is

---

8. It is not clear under *Jabbar* and *Hollman* whether Biddulph could not simply file a new application for benefits, now that the time limita-

**FURTHER ORDERED** that this matter is REMANDED to the Commissioner, who shall include within his records the net earnings from self employment reported by plaintiff on her 1992 and 1993 federal income tax returns, as adjusted by plaintiff's direct expenses reported in the Administrative Record at page 21, and who shall promptly grant plaintiff's application for Retirement Insurance Benefits under Title II of the Social Security Act.

IT IS SO ORDERED.

tion has run, and automatically receive credit for the income on her 1992 and 1993 tax returns.