Hunter A. GARDNER,
Plaintiff-Appellant,

v.

Margaret HECKLER, Secretary of
Health and Human Services,
Defendant-Appellee.

No. 85–4242

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1985.

William P. Featherston, Jr., Jackson, Miss., for plaintiff-appellant.

George Phillips, U.S. Atty., L.A. Smith, III, Asst. U.S. Atty., Jackson, Miss., for defendant-appellee.

Before RUBIN, REAVLEY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

This action was brought under 42 U.S.C. § 405(g). to obtain judicial review of a final decision of the Secretary of Health and Human Services (the Secretary) denying a claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 301–433 (the Act). The district court upheld the decision of the Secretary denying benefits; we reverse.

### I.

Hunter A. Gardner alleges that he became disabled on February 15, 1979. On September 27, 1979, Gardner filed an application with the Social Security Administration to establish a period of disability and to obtain disability insurance benefits. This application was denied under sections 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i) and 423, because Gardner allegedly had failed to show that he had at least twenty quarters of coverage during the forty-quarter period ending March of 1979.[1] On April 10, 1980, Gardner requested a hearing before an Administrative Law Judge (ALJ) which resulted in a denial of Gardner's disability claim. The Appeals Council affirmed the decision of the ALJ and Gardner brought suit alleging that the decision of the ALJ and the Appeals Council was erroneous.

Unable to obtain a transcript of the proceedings before the ALJ, the district court remanded the suit to the Appeals Council which in turn remanded to the ALJ for a supplemental hearing. The hearing was held on January 7, 1982, and on February 26 the ALJ reissued his decision denying Gardner's claim for disability. The Appeals Council affirmed.

The district court referred the case to a United States magistrate who recommended that the ALJ be upheld. Finding that the Report and Recommendation of the United States Magistrate was "neither clearly erroneous nor contrary to the law," the district court affirmed the decision of the Secretary.

We find that the opinion of the ALJ that Gardner had too few quarters of coverage to be insured was not founded upon substantial evidence and, accordingly, reverse the decision of the district court.

### II.

When Gardner filed his application for a period of disability and disability insurance benefits, he was given credit for seventeen of the forty quarters preceding and including February 15, 1979, three quarters short of what he needed to be eligible for benefits.[2]

On December 28, 1978, prior to the onset of his alleged disability, Gardner was audited by the IRS. The auditor found that Gardner had understated his taxes by fifty-six dollars.[3] On November 12, 1979, with

---

1. Section 223(c)(1) of the Act provides that an individual shall be insured for disability insurance benefits if he had not less than twenty quarters of coverage during the forty-quarter period which ends with the quarter in which the month of disability occurs.

2. February 15, 1979, is the date on which Gardner allegedly became unable to work.

3. Gardner had taken a deduction for $59 in state income taxes which were later refunded to him. He had also taken deductions disallowed by the auditor for other taxes and medical deductions totaling $73. Finally, he had neglected to claim interest income totaling $281. No penalties were assessed for these discrepancies.

the assistance of his CPA, Anne Hamilton, he filed an amended income tax return at which time he elected to pay social security self-employment taxes for 1976 using the non-farm optional method.[4] *See* 20 C.F.R. § 404.1094 (1985) (non-farm optional method described).

On November 19, 1979, Gardner filed with the Social Security Administration a request for reconsideration based on his amended 1976 tax return. The Social Security Administration reviewed Gardner's case but again rejected his application for benefits because he did not meet the minimum earnings requirement for two of the three years preceding 1976, the year Gardner's non-farm option was used.

On April 10, 1980, Gardner, again with the assistance of Anne Hamilton, filed an amended income tax return for 1977. This amended return showed net self-employment income of $794 rather than a $2,784 loss as originally claimed.[5] Using the non-farm optional method, Gardner elected to pay $182 in social security taxes. It is undisputed that if the information in the amended return had been accepted as true, Gardner would have been entitled to four additional quarters of credit.

The ALJ had before him the 1977 amended return, as well as Gardner's business records for that year and an affidavit by Anne Hamilton stating that she had pre-pared the 1977 return in conformance with the Internal Revenue Code, standard accounting procedures, and the Code of Ethics for CPAs. Noting, however, that "Mr. Gardner submitted his 1977 amended tax return after the initial and reconsidered denial [by the Social Security Administration] of his claim for disability insurance benefits," the ALJ found that his amended tax return "fails to have the credibility necessary to demonstrate earned income for Social Security purposes...."

The ALJ found that

where the wage earner has not shown any income from self-employment for approximately five years [6] and is denied for disability because of lack of quarters of coverage, his amended tax return showing income in order to establish disability coverage filed soon after the reconsideration is highly questionable and appears to be motivated solely by the prospect of receipt of disability insurance benefits.... In the *Phillips* case [an unpublished 1977 case from the United States District Court for the Western District of North Carolina], the claimant was denied disability insurance benefits because he did not meet the earnings requirement for disability purposes.... After the denial of claimant's application ... he filed late Federal Income Tax Returns pre-

---

**4.** 42 U.S.C. § 405(c)(4)(C) states as follows:
Prior to the expiration of the time limitation [three years, three months and fifteen days] *following any [tax] year the Secretary may, if it is brought to his attention that any entry of wages or self-employment income in his records for such year is erroneous or that any item of wages or self-employment income for such year has been omitted from such records, correct such entry or include such omitted item to his records as the case may be. After the expiration of the time limitations following any year ... (C) the absence of an entry in the Secretary's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this Subchapter, that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year, in which case* the Secretary shall include in his records the self-employment income of such individual for such year.

**5.** Gardner sold his television repair business in the fourth quarter of 1977. The increase in non-farm income was attributed by Anne Hamilton to depreciation on the business premises taken in excess of basis and sales of some of Gardner's equipment, inadvertently omitted from his original return. Gardner also adjusted his income from farming activities to reflect depreciation taken in excess of basis and income from the sale of some calves.

Gardner prepared his original return without the assistance of a tax adviser. This court has not been informed of any penalties assessed against Gardner for these omissions.

**6.** Gardner filed tax returns for these years showing a net loss after his expenses, depreciation allowances, and other deductions were taken.

pared for the years 1968, 1969, and 1970 which showed net farm profits. Immediately following the filing of the amended tax returns, the claimant filed a second application for a period of disability and disability insurance benefits.... In the *Phillips* case, the court upheld the discrepancies and inconsistencies noted by the Administration which included no tender of proof as to why the self-employment income was not reported on the original joint return. There was noted in the court's decision an absence of explanatory evidence on the necessity of filing amended returns.... [T]he records introduced to verify the amended returns were given very little weight.

The Administrative Law Judge finds that in the instant case, the claimant's testimony as to the reason why he filed an amended 1977 income tax return was vague, hesitant, inconclusive, and inconsistent.[7] Due to the highly questionable circumstances of claimant's reporting, since the claimant had not reported income since the first quarter of 1972, the Administrative Law Judge finds that the claimant has been motivated by the prospect of receiving disability insurance benefits and that his self-employment income as shown on his amended tax return fails to reflect a bona fide engagement in self-employment activities....

(Footnotes not in original.)

The sole issue on appeal is whether we should leave standing the judgment rendered by the ALJ and adopted by the Secretary that Gardner did not meet his burden of proving by a preponderance of the evidence that his amended 1977 return was accurate.

## III.

■ If the findings adopted by the Secretary were founded upon substantial evidence[8] contained in the administrative record considered as a whole and are in accordance with the applicable statutes, this court must sustain those findings. *Blanks v. Richardson*, 439 F.2d 1158, 1159 (5th Cir.1971). Moreover, the court may not substitute its own inferences for those of the Secretary if those inferences are reasonably drawn from properly entered findings of fact. *Alsobrooks v. Gardner*, 357 F.2d 110 (5th Cir.1966); *Bridges v. Gardner*, 368 F.2d 86, 90 (5th Cir.1966). As stated by the Second Circuit: "It was the judgment of the administrative body ... rather than that of the court which the statute made effective provided that judgment was based upon conclusions reasonably reached upon due consideration of all relevant issues presented...." *Walker v. Altmeyer*, 137 F.2d 531, 533–34 (2d Cir. 1943) (citing *Gray v. Powell*, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301 (1941)).

■ We find that the only basis for the ALJ's denial of insured status to Gardner was his belief that Gardner's primary motivation in filing his 1977 amended return was to collect social security benefits.[9]

7. In contrast to the rest of his testimony which was exceptionally cogent and clear, Gardner gave the following response concerning his motive for filing amended returns.

Q. And, Mr. Gardner, would you tell His Honor, why your 1977 taxes were amended?
A. In the fall of 19—in the late fall of 1978, while I was employed by Healthco, here in Jackson, my ... my tax—my federal tax return was ... was audited by Mr. Gues (phonetic) of the IRS, here in Jackson. That was tax year 1976. While or during ... during the ... the audit, he and I discussed not only the 1976 tax return, but the 1977—the year following that and I indicated then that I had closed ... closed my business. He suggested to me, that I not only—he suggested that I clear up my tax

situation by going to some professional person and having them review my records. And this I—this advice from him I was following. That I did do.

8. "Substantial evidence" required to uphold findings and decisions of the Secretary in social security disability cases is more than a mere scintilla and means such relevant evidence as a reasonable mind might accept to support a conclusion. *Williams v. Finch*, 440 F.2d 613, 617 (5th Cir.1971); *Bridges v. Gardner*, 368 F.2d 86, 90 (5th Cir.1966).

9. The judge also believed it relevant that Gardner had not shown a net income for five years preceding 1977. Because Gardner realized substantial income from the sale of his business in

Such motives may indeed create a duty of vigilance on the part of the Secretary to protect the integrity of the Social Security program. We cannot fathom, however, how Gardner's interest in obtaining benefits makes his amended return presumptively less credible than any other representation made by anyone seeking government benefits. The natural, human response by anyone in Gardner's position would be to re-examine prior income tax returns in hopes of identifying an error. Gardner's tax returns for 1977 were immensely complicated. And understandably so since he sold his business that year. We are therefore only sceptical, not incredulous, that the original return was in error.

Certainly, the existence of the original return imposes a burden on Gardner to show that his net income, as originally reported, was incorrect. In meeting this burden, he produced an affidavit by a CPA, Anne Hamilton, affirming that she had recalculated his net income on the basis of his business records. These records, produced for the court, included Gardner's Greenwood Ledger, his receipts, invoices, and checks. Unless manufactured (and there is not a scintilla of evidence that they were), these records are much more credible than Gardner's original tax return. They were, in fact, the interpretive base for the original return. And yet, the ALJ devoted not one sentence of his opinion to evaluating Gardner's proffered evidence. He fell back instead on *Phillips* in which, according to the ALJ, the court gave "very little weight" to the applicant's documentary evidence.

■ We have exhaustively searched and have not found a case, not even the unreported case cited by the ALJ, which suggests that it is proper for the Secretary to disregard business records when there is no evidence negating their genuineness

merely because the Social Security applicant had hopes of receiving benefits when he filed an amended return.[10] In the two reported cases involving the same issue of fact, *Gross v. Weinberger*, 398 F.Supp. 907 (E.D.Ky.1975); *Garner v. Richardson*, 339 F.Supp. 1126 (N.D.Miss.1971), the courts explored in depth and evaluated each piece of documentary evidence presented. In both these cases the applicants attempted to establish income from "odd jobs." There was no documentation or evidence of this income in *Gross*, except the applicant's mother's sketchy and inconsistent testimony that she gave her son fifty dollars a month for helping around the family restaurant. In *Garner* the applicant also tried to establish income from his business as a contractor. Gardner produced letters from his clients saying how much he had been paid for his services. Unfortunately, however, he had no business records of his expenses and his CPA testified that he prepared the amended returns without any business records to substantiate his expenses.

■ We believe that the ALJ's decision to give no weight to Gardner's business records, invoices, receipts, and checks because Gardner was motivated by a desire for benefits misconceives the duties imposed on him by 42 U.S.C. § 405(c)(4). Congress did not limit the Secretary's consideration of amended returns to those filed by persons not yet disabled. Absent a finding that Gardner's records were not authentic or did not substantiate the amended return, the ALJ had a duty to grant insured status to Gardner. It is not sufficient to state that the amended return lacked credibility without considering reliable and ample documentation supplied by Gardner.

### IV.

For these reasons we REVERSE the decision of the district court upholding the

---

1977, we do not believe that absence of net income between 1972 and 1976 has any probative value.

**10.** Whereas *Phillips* involved discrepancies and inconsistencies in the applicant's testimony, none have been identified in the present case.

Moreover, the ALJ gives no hint of what documentation was proffered in *Phillips*. We have no idea whether it was of the sort offered by Gardner or of a sort inherently less worthy of credence.

Secretary's denial of insured status to Gardner, and REMAND so that the case may be remanded to the Secretary for consideration of the medical evidence.