**Marion CHAPMAN, Plaintiff–Appellant,**

v.

**Kenneth S. APFEL, Commissioner of Social Security Administration, Defendant–Appellee.**

**No. 99–35614.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted by Telephone Nov. 15, 2000

Filed Dec. 29, 2000

David B. Lowry, Portland, Oregon, for the plaintiff-appellant.

Richard H. Wetmore, Assistant Regional Counsel, Social Security Administration, Seattle, Washington (signed the brief), and David Burdett, Seattle, Washington (argued), for the defendant-appellee.

Before: BEEZER, RYMER, and GRABER, Circuit Judges.

RYMER, Circuit Judge:

This appeal requires us to decide whether the Commissioner of the Social Security Administration properly denied disability benefits to a claimant for whom earnings records showed neither self-employment income nor wages for sufficient "quarters of coverage."[1]

Marion Chapman applied for disability benefits when he broke his pelvis in a tractor accident July 26, 1994. Social security records indicated that he did not pay in every year and that there were gaps in his earnings record for 1988–1990. His application was denied initially and upon reconsideration. At a hearing before an Administrative Law Judge (ALJ) where he was represented by counsel, Chapman testified that he was paid by Mid–Columbia Medical Center in The Dalles, Oregon, the company for which he worked as a security guard during 1988, 1989 and 1990, and that he filed tax returns for each of those years. Chapman did not produce any returns, although he was given five months to do so. Instead, he tried to show that he should be credited for income based on IRS Form 1099s filed by Mid–Columbia. These are information returns which reported payments of nonemployee compensation to Chapman in the amount of $7037.50 for 1988, $6521.25 for 1989, and $7177.50 for 1990.[2]

The ALJ found that Chapman worked during these years for Mid–Columbia as an independent contractor, but did not pay social security taxes. The ALJ also found that Chapman's earnings record could not be credited with additional wages or quarters of coverage and that, as he had only 19 of the 20 quarters required for insured status, he was not entitled to disability insurance benefits. The Appeals Council

---

1. A person claiming disability must show that he has earned $50 in wages or $100 in self-employment income for 20 quarters out of 40 in the period immediately prior to the date of onset. 42 U.S.C. § 416(i)(3)(B)(i); 20 C.F.R. § 404.130.

2. Entities that pay over $600 per year to another as income are required to file a Form 1099. 26 U.S.C. § 6041.

denied Chapman's request for review. The district court affirmed. It held that under the applicable statute, 42 U.S.C. § 405(c)(4)(C), and regulation, 20 C.F.R. § 404.803(c)(3), the Commissioner's earnings records are conclusive evidence that Chapman did not receive self-employment income because he did not produce income tax returns for the years·in question. The court further noted that, even if the 1099 forms could be considered, they fail to reflect net self-employment income.[3] We agree. Because Chapman's alternative argument, that he worked for Mid–Columbia as an employee instead of as an independent contractor, lacks support in the record, we affirm.

## I

Every person claiming disability benefits must show that he is an insured. To have insured status, a claimant must have earned either $50 in wages or $100 in self-employment income for at least 20 quarters in the 40–quarter period immediately prior to the date of disability.[4] 20 C.F.R. § 404.130(b)(2). The Commissioner tracks the social security earnings record of a wage-earner by taxes paid by the employer, but an individual who is self-employed must file a personal income tax return Form 1040 with a Schedule SE (self-employment) and a Schedule C (business profits and loss statement), and pay his own social security taxes. If he does not, the Commissioner's records will show no self-employment income. Without a record of self-employment income, there will be no coverage for purposes of insured status.

The Social Security Act provides that the Commissioner's records "shall be evidence . . . of the amounts of wages paid to, and self-employment income derived by, an individual and of the periods in which such wages were paid and such income was derived." 42 U.S.C. § 405(c)(3). However, the Act allows for the record to be amended if errors are brought to the Commissioner's attention within three years, three months and fifteen days of the year in question. 42 U.S.C. § 405(c)(1)(B); 20 C.F.R. § 404.802. Here, it is undisputed that the time limit for amending Chapman's earnings records had expired. After expiration of the time limitation, the records may still be corrected but in different ways (and with different effect) depending upon whether there is an "entry" or an "absence of an entry" in the records, and upon whether the source of earnings was wages or self-employment income.

*If there is an "entry":* Section 405(c)(4)(A) provides that the Commissioner's records—with changes made pursuant to paragraph (5)—of the amount of wages or self-employment income derived is "conclusive."[5] Paragraph (5) permits the

**3.** The social security threshold is met only when *net* self-employment income exceeds the statutory minimum. *See* 42 U.S.C. §§ 413(a)(2)(A)(i) and 411(b).

**4.** There are other ways to qualify, but none is pertinent to this appeal.

**5.** 42 U.S.C. § 405(c)(4) and (5) provide in relevant part:

(4) Prior to the expiration of the time limitation following any year the Commissioner may, if it is brought to the Commissioner's attention that any entry of wages or self-employment income in the Commissioner's records for such year is erroneous or that any item of wages or self-employment income for such year has been omitted from such records, correct such entry or include such omitted item in the Commissioner's records, as the case may be. After the expiration of the time limitation following any year—
(A) the Commissioner's records (with changes, if any, made pursuant to paragraph (5) of this subsection) of the amounts of wages paid to, and self-employment income derived by, an individual during any period in such year shall be conclusive for the purposes of this subchapter;
(B) the absence of an entry in the Commissioner's records as to the wages alleged to have been paid by an employer to an individual during any period in such year shall be presumptive evidence for the purposes of this subchapter that no such alleged wages were paid to such individual in such period; and

Commissioner to change or delete any entry with respect to wages or self-employment income in his records or include in his records any omitted item of wages or self-employment income to conform his records to tax returns or portions thereof (including information and other written statements) filed with the Commissioner of Internal Revenue. Regardless, no amount of self-employment income may be included in the Commissioner's records if a return or statement is filed after the time limit. 42 U.S.C. § 405(c)(5)(F)(i). Thus, if there is an entry of self-employment income, that entry may be "conformed" to a tax return or portion thereof filed before the time limit expired.

If there is an "absence of an entry": Section 405(c)(4)(B) provides that the Commissioner's records as to *wages* shall be *presumptive* evidence that no wages were paid, but § 405(c)(4)(C) provides that the records as to *self-employment income* shall be *conclusive* evidence that no self-employment income was derived unless the claimant filed a tax return of self-employment income for the year in question before the time limit expired. There is no dispute that the Commissioner's records

have no entry of self-employment income for Chapman.

Chapman argues that the ALJ erred by failing to consider Form 1099s as proof of insured status. He contends that these forms, furnished as they were in his case by an independent third-party, eliminate concern over a fraudulent claim and should be considered because § 405(c)(5)(F) allows for income to be established from "tax returns or portions thereof (including information returns ... )." The Commissioner maintains that the district court correctly relied on. § 405(c)(4)(C) instead. In the Commissioner's view, because the absence of entries in Chapman's earnings records gives rise to a conclusive presumption that he did not receive self-employment income for the three years in question, he had to produce federal tax returns to establish self-employment income in order to qualify. Having not done so, the Commissioner submits, Chapman may not rely on 1099 forms because they do not satisfy the requirements of § 405(c)(4)(C).

■ The plain construct of the statute requires the conclusion that Chapman derived no self-employment income for the years 1988, 1989 and 1990. The regulations are to the same effect.[6] Under both,

(C) the absence of an entry in the Commissioner's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year, in which case the Commissioner of Social Security shall include in the Commissioner's records the self-employment income of such individual for such year.
(5) After the expiration of the time limitation following any year in which wages were paid or alleged to have been paid to, or self-employment income was derived or alleged to have been derived by, an individual, the Commissioner of Social Security may change or delete any entry with respect to wages or self-employment income in the Commissioner's records of such year

for such individual or include in the Commissioner's records of such year for such individual any omitted item of wages or self-employment income but only—

. . . . .

(F) to conform the Commissioner's records to—
(i) tax returns or portions thereof (including information returns and other written statements) filed with the Commissioner of Internal Revenue ...
except that no amount of self-employment income of an individual for any taxable year (if such return or statement was filed after the expiration of the time limitation following the taxable year) shall be included in the Commissioner's records pursuant to this subparagraph; ...

6. 20 C.F.R. § 404.803(c)(3) provides that if the Commissioner's records show "no entry" of self-employment income for a particular year, the records are conclusive evidence that the claimant did not receive self-employment

the absence of an entry of self-employment income for 1988, 1989 and 1990 meant that Chapman had to show that he had filed a tax return of self-employment income sometime before the limitation period expired.

We so held in *Singer v. Weinberger*, 513 F.2d 176, 177 (9th Cir.1975). There, too, the Commissioner [7] had no record of earnings for the requisite "quarters of coverage." We held that the absence of an entry of self-employment income in the Commissioner's records, coupled with an absence of the claimant's tax returns showing such income, foreclosed Singer's attempt to prove self-employment income.

Chapman, however, points out that we did not explicitly consider § 405(c)(5)(F) in *Singer*, nor did we address whether Form 1099s might suffice as evidence of employment and income.[8] This being the case, Chapman urges us to follow *Grigg v. Finch*, 418 F.2d 661 (6th Cir.1969), and *Hendrickson v. Secretary of Health and Human Services*, 765 F.2d 747 (8th Cir.), *vacated as moot under settlement agreement*, 774 F.2d 1355 (1985), both of which allowed use of Form 1099s to establish self-employment income for quarters of coverage. The Commissioner, on the other hand, points out that the *Grigg* rationale was rejected by *Yoder v. Harris*, 650 F.2d 1170 (10th Cir.1981), which held that a claimant's account may only be credited with self-employment income by proof of a timely filed federal income tax return—not by a Form 1099. It was rejected by the Commissioner as well.[9]

In *Grigg*, the claimant contended that the Commissioner had erroneously failed to credit his records with certain self-employment income received, but not reported by him, in the years 1956 and 1957. During the years in question, the Detroit Conservatory of Music filed Form 1099s indicating that Grigg had received self-employment income from his services at the Conservatory. Further, Grigg filed a Form 1040 individual income tax return in both 1958 and 1959; on each of these returns, Grigg requested the tax refund due him be "credited on 1957 estimated tax." The court concluded that Grigg was entitled to have his earnings record reflect his self-employment income for 1956 and 1957 because the information transmitted to the Commissioner in the 1099 information returns and Grigg's 1958 and 1959 income tax returns gave the Commissioner actual or constructive knowledge under § 405(c)(5)(F) that the claimant had sufficient self-employment income in the years 1956 and 1957 to be credited with quarters of coverage for those years. In doing so,

income in that year unless a tax return of self-employment income is filed before the end of the time limit or an amount is erroneously entered as wages. 20 C.F.R. § 404.822(b)(2)(i), (iii).

7. In 1994 amendments to 42 U.S.C. § 405 replaced references to the Secretary of Health and Human Services with the Commissioner of Social Security. We refer to the Commissioner in discussing pre–1994 decisions.

8. There is no question that 1099 forms may be (and were here) considered as evidence of employment. *See Siclari v. Folsom*, 251 F.2d 365, 367 (9th Cir.1958) (stating that a form 1099 income tax information return showed by whom the social security claimant had been paid). This is not at issue on appeal.

9. The Commissioner adopted *Yoder* as social security policy in Social Security Ruling 82–20(c), 1982 WL 31417 (S.S.A.). A Social Security Ruling is "binding on all components of the Social Security Administration," including the ALJ in this case. 20 C.F.R. § 402.35(b)(1). In 1986 the Commissioner issued an Acquiescence Ruling ("AR") in *Grigg*, but it is applicable in the Sixth Circuit only. AR 86–20(6); 1986 WL 68652 at *2; *see* 20 C.F.R. 404.985. Under the AR, the Commissioner will credit workers in states within the Sixth Circuit with self-employment income where receipt of self-employment income is documented by timely filed IRS Form 1099s by disinterested third parties. However, the AR notes that the Form 1099 reflects only the gross amount of money paid to the worker, whereas in order to determine the amount of self-employment income to be credited to the worker's earnings record, it will be necessary to determine the net earnings from the self-employment. *Id.* at *3 n. 2.

the court construed the "absence of an entry" referred to in § 405(c)(4)(C) as an " 'absence' which persists even after inclusions in the Commissioner's records allowed by § 405(c)(5)(F)." [10]

In *Yoder*, the claimant's social security earnings record contained no entries from 1961–1973, nor had he filed federal income tax returns for the years 1962–1974. Both parties agreed that § 405(c) prohibited use of delinquent income tax returns to credit the account with self-employment income for 1962–1971, but Yoder relied on Form 1099s filed by various farm cooperatives which showed patronage dividends paid to him. The court disagreed with *Grigg*'s interpretation of § 405(c)(5)(F). In its view:

> Congress did not insert the modifying parenthetical "including information returns and other written statements" after "portion thereof" unwittingly; rather, it purposively drafted section 405(c)(5)(F) to be consistent with the language of section 405(c)(4)(C). Under section 405(c)(5)(F) the Secretary is only permitted to update his records based on information contained in a timely filed tax return or portions thereof, the parenthetical following "portions thereof" simply explains that portions of timely filed tax returns that may reveal self-employment income include information returns and other written statements. So construed, the language in section 405(c)(5)(F) is equivalent to the language in section 405(c)(4)(C) which requires proof that the claimant "filed a tax return of his self-employment income" in order to rebut the conclusive presumption created by an absence of information in the Secretary's records.

*Yoder*, 650 F.2d at 1172–73. The court further noted that " 'the creation of an administratively feasible mode for determining the eligibility of self-employed claimants was a paramount legislative concern in 1950 [when social security benefits were extended to the self-employed]. Reliance on income tax returns was regarded as the only workable plan.' " *Id.* at 1173 (quoting *Shore v. Califano*, 589 F.2d 1232, 1238 (3d Cir.1978)). For this reason Congress provided in § 405(c)(4)(C) that the Commissioner's records of self-employment income become conclusive after expiration of the time limitation unless claimant filed an income tax return. Further, the court held that Form 1099s do not constitute tax returns or portions thereof even under § 405(c)(5)(F). This is because they reflect the individual's gross income and do not reflect expenses or losses.

*Yoder* is consistent with our prior decision in *Singer*, the Third Circuit's in *Shore*, and the Fifth Circuit's in *Martlew v. Celebrezze*, 320 F.2d 887, 889 (5th Cir.1963) (to "add self-employment income to his earnings record, a claimant must show that he timely filed a 'tax return of his self-employment income.' "). *See also Hollman v. Department of Health and Human Services*, 696 F.2d 13, 15–16 (2d Cir.1982) (allowing amendment based on timely filed self-employment income tax returns and distinguishing *Yoder* and *Shore* on the basis that there were no actual timely filed tax returns in those cases). Since then, the Third Circuit has also squarely held that Form 1099s do not establish net income for purposes of establishing self-employment earnings. *Weisbraut v. Secretary of Health and Human Services*, 757 F.2d 83, 86 (3d Cir.1985).

10. *Grigg*'s reasoning was embraced by the majority of an Eighth Circuit panel in *Hendrickson*, but the opinion was vacated. There, the claimant did carpentry work for Walker Art Center during 1967, 1968 and 1969. The Center filed Form 1099s each year, but the claimant did not file an income tax return for 1967 or 1968. He did file a joint return with his wife in 1969. The opinion states that the Form 1099s, the 1969 Form 1040, and other information including letters in the Commissioner's file are contemporary official documents which establish that Hendrickson's gross income was also his net income, and thus that he was entitled to extra quarters of coverage. *Hendrickson*, 765 F.2d at 752.

We are persuaded that this line of authority, not *Grigg* (or *Hendrickson*) is more faithful to the text and structure of the statute. Section 405(c)(4)(C) clearly provides that when the Commissioner's records show no entry of self-employment earnings, and the time for amending the records has passed, a claimant may add self-employment income to his earnings record only by proving that he timely filed a federal income tax return of self-employment income. Moreover, Form 1099s do not show net self-employment income. Although Chapman suggests that the income reported on Mid–Columbia's 1099 forms should be interpreted as reflecting both net and gross income absent proof of filed tax returns which reflect expense deductions, we see no logical basis for inferring that the failure to declare expenses means that Chapman's net income was the same as his gross income. To the contrary; a failure to file tax returns implies that net income was below the social security minimum, as the threshold of net self-employment income required for filing self-employment tax returns is the same as for social security eligibility. *Compare* 26 U.S.C. § 6017 (requiring return of net self-employment earnings of $400 or more) and 42 U.S.C. §§ 413(a)(2)(A)(i), 411(b) (crediting quarter of coverage for social security purposes of $100 or more of net self-employment income).

In sum, a timely filed tax return of self-employment income, not just 1099 forms, is required to overcome the otherwise conclusive presumption that the absence of an entry of self-employment earnings means that there were no such earnings. Tax regulations provide that a return of self-employment income is to be made on Form 1040 income tax returns, 26 C.F.R. § 1.6017–1, including a completed Schedule C or its equivalent. *See Martlew*, 320 F.2d at 889–90; *Hollman*, 696 F.2d at 14–15 (both describing the process). Form 1099s do not show the same information. Accordingly, the ALJ did not err by failing to consider the Form 1099s as proof of self-employment income for purposes of determining Chapman's insured status.

II

Alternatively, Chapman contends that he should be credited with sufficient quarters of coverage because he was an "employee." He points to regulations which essentially adopt the common law rules on employer-employee status, 20 C.F.R. § 404.1007, and argues that applying these factors to Chapman's position as a security guard with the hospital shows that he was working as an employee. For this he relies on documents in his employee file, but neither the administrative record nor the record in the district court contains any such material. Chapman offers no cause why it could not have been presented to the ALJ. *Cf. Orteza v. Shalala*, 50 F.3d 748, 751 (9th Cir.1995) (no good cause for not submitting evidence earlier). In any event, Chapman's earnings records do not reflect the receipt of wages, either. The presumption that no such wages were paid is rebuttable, *Singer*, 513 F.2d at 177, but Chapman's only evidence is his own testimony that he was not self-employed and that he was hired by the hospital and paid by the hospital. There is no other oral or documentary support for overcoming the presumption. *See* 20 C.F.R. § 404.822 (providing that after the time limit for any year ends, the Commissioner will correct SSA records to agree with a tax return of wages or with a wage report of a state). As the district court concluded, the ALJ's findings are supported by substantial evidence in the record.

Chapman also faults the district court for overlooking 20 C.F.R. § 404.822(e)(3), which provides that an earnings record may be changed when an entry occurred as a result of fraud. For this he offers no authority, but posits instead that it is unfair to penalize him for his employer's failure to categorize him properly as an

employee. However here, there is no basis upon which to reverse the ALJ.

AFFIRMED.