Beata NICKEL, Plaintiff,

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.**

**No. CV 00–13561 AJW.**

United States District Court, C.D. California, Western Division.

June 6, 2002.

Lawrence D. Rohlfing, Lawrence D. Rohlfing Law Offices, Santa Fe Springs, CA, for Beata Nickel, plaintiff.

Robert I. Lester, AUSA—Office of U.S. Attorney, Civil Division, Los Angeles, CA, for Larry G Massanari, Commissioner of Social Security Administration aka, Jo Anne B. Barnhart, defendant.

## MEMORANDUM OF DECISION·

WISTRICH, United States Magistrate Judge.

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. Plaintiff filed a motion for summary judgment, and the Commissioner filed a cross-motion for summary judgment.

### Administrative Proceedings

Plaintiff filed an application for disability insurance benefits on August 15, 1997, alleging that she had been disabled since November 9, 1996, due to paralysis of her right arm and hand from a car accident, pain and weakness in her left arm, left leg, back, neck, and shoulders, headaches, and concentration and memory problems. [Administrative Record ("AR") 55–57, 76, 82]. Plaintiff's application was denied on the ground that she lacked sufficient quarters of covered earnings to be considered insured under Title II of the Social Security Act (the "Act").[1] [AR 14, 59–62]. Plaintiff requested an administrative hearing, which was conducted before Administrative Law Judge Dean K. Franks (the "ALJ") on November 17, 1998. [AR 29–54]. Plaintiff, who was represented by her attorney, James Shea, testified on her own behalf. [AR 31–54].

On June 5, 1999, the ALJ issued a written decision concluding that plaintiff was

---

1. Plaintiff filed a prior application for disability insurance benefits in December 1994 that was denied for the same reason. [*See* AR 4–5, 33, 55, 122]. It is not clear from the record when that application was finally denied.

ineligible for disability insurance benefits because she had not satisfied the criteria for insured status under the Act. [AR 20–21]. The ALJ based his conclusion on the following findings: (1) plaintiff did not engage in a regular or continuous self-employed occupation or calling with a good faith attempt to produce profit or income between 1993 and 1996; (2) plaintiff was not "self-employed" between 1993 and 1996; (3) plaintiff's reported earnings between 1993 and 1996 for work performed in 1993 do not qualify as "self-employment" income pursuant to 20 C.F.R. §§ 404.110, 404.130(b), 404.101(b) and 404.143, and such income does not count towards quarters of "covered" earnings; (4) plaintiff did not have at least twenty quarters of coverage during the forty-quarter period ending with the quarter in which the period of alleged disability began, and therefore she does have insured status under the Act (citing 20 C.F.R. §§ 404.110, 404.130(b)). [AR 20–21]. The Appeals Council denied plaintiff's request for review. [AR 4–6].

### Factual Background

Plaintiff testified that she was employed as a physician and surgical resident at Stanford Hospital until she resigned from that position in December 1992 to pursue a residency in ophthalmology at UCLA commencing in July 1993. [AR 43]. Plaintiff explained that because she had no job during the six-month gap between her residencies, she

> started putting up notes on bulletin boards and telling people that, you know, I'm looking for some work as a typist. And I got some work. So I did that in the time between my two medical jobs for those six months, for Dean Development, and then I moved down to Los Angeles to start the job at UCLA in, on July 1, 1993 and I continued doing some typing work down here to supplement my income. You don't get paid

> much as a resident and I had been doing so well with it in the time between jobs I continued doing it until my [car] accident in November of '93 from which I suffered terrible injuries and ended up with a paralyzed arm and couldn't do any typing after that.

[AR 43–44]. Plaintiff testified that she had not performed typing or any other work for pay since her November 1993 car accident. [AR 43–44, 47]. She alleged, however, that she received one payment each year in 1994, 1995, and 1996 for typing that she had performed in 1993 prior to her accident. [See AR 31–37]. Plaintiff offered documentary evidence and her testimony to show that one client, Larry Dean ("Dean") of Dean Development, paid her $2,500 in June 1993, $2,500 in April 1994, and $2,600 in June 1995, and that a second client, Dr. Robert Smyth ("Smyth"), paid her $6,200 in October 1996. [AR 36–37, 44–50]. Plaintiff presented a declaration under penalty of perjury from Dean dated December 1998 attesting that plaintiff worked a total of 380 hours in 1993 at the rate of $20.00 per hour, for a total of $7,600, which he paid in cash on the dates noted above. [AR 140–141]. Plaintiff also submitted letters from Dean dated April 1993, June 1993, and April 1994 stating that "our financial situation continues to be difficult," and promising to pay plaintiff the balance owed her in the future. [AR 126–127]. In addition, the record includes a letter dated October 1996 from Smyth which states: "I have finally been able to get my finances together. Enclosed please find the money which I owe to you. Please cash the second check in December." [AR 133].

### Standard of Review

■ The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect

legal standards. *Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir.2001); *Tackett v. Apfel,* 180 F.3d 1094, 1097–1098 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Tackett,* 180 F.3d at 1098. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420 (quoting *Consolidated Edison Co. of New York v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir.1999).

### Plaintiff's Contentions

Plaintiff contends that the ALJ improperly determined that she did not have disability insurance benefits coverage under Title II of the Act. In particular, plaintiff contends that the ALJ erred in finding that she was not engaged in a "trade or business" within the meaning of the regulations from 1993 through 1996, and therefore mistakenly concluded that she did not have sufficient self-employment income during the years 1993 through 1996 to earn "quarters of coverage" for those years. [Plaintiff's Memorandum at 3–13].

### Discussion

#### "Insured status" requirements

In order to be eligible to receive disability insurance benefits, plaintiff must demonstrate that she has "insured status" within the meaning of the Act. *See generally* 42 U.S.C. §§ 414, 423(a),(c); 20 C.F.R. §§ 404.101 *et seq.; Chapman v. Apfel,* 236 F.3d 480, 482 (9th Cir. 2000). Whether plaintiff has the required insured status depends on the numbers of "quarters of coverage" she has acquired. 20 C.F.R. § 404.101(a). To satisfy the insured status requirement, plaintiff must have earned either $50 in wages or $100 in self-employment income during at least 20 quarters of the 40–quarter period immediately preceding the date of her alleged disability. *See Chapman,* 236 F.3d at 482 (citing 20 C.F.R. § 404.130(b)(2)); *see also* 42 U.S.C. § 416(i)(2)(C),(i)(3)(B)(i); 20 C.F.R. §§ 404.110, 404.130, 404.143. Self-employment earnings establish disability insurance benefits coverage under the Act only if (1) the earnings were derived from a "trade or business," and (2) the net earnings that can be counted as self-employment income equal or exceed the statutory threshold. 20 C.F.R. § 404.1065; *see* 20 C.F.R. §§ 404.1066–404.1077 (regulations regarding trade or business requirement); 20 C.F.R. §§ 404.1080–404.1095 (regulations regarding net earnings requirement).

#### "Trade or business" requirement

The Commissioner's regulations specify that the term "trade or business" has the same meaning as it does when used in section 162 of the Internal Revenue Code, with exceptions not relevant here. 20 C.F.R. §§ 404.1066; *see* 26 U.S.C. § 162. The Commissioner's regulations and section 162 do not define a "trade or business," but the United States Supreme Court has "authoritatively construed" that term. *See Biddulph v. Callahan,* 1 F.Supp.2d 12, 18 (D.D.C.1998) (citing *Commissioner of Internal Revenue v. Groetzinger,* 480 U.S. 23, 35, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987)). In *Groetzinger,* the Court explained that the "trade or business" inquiry is fact-specific, and that

> not every income-producing and profit-making endeavor constitutes a trade or business. The income tax law, almost from the beginning, has distinguished between a business or trade, on the one hand, and transactions entered into for profit but not connected with business or

trade, on the other. Congress distinguished the broad range of income or profit producing activities from those satisfying the narrow category of trade or business. We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify.

*Groetzinger*, 480 U.S. at 35, 107 S.Ct. 980 (internal quotation marks and citations omitted).

### Was plaintiff's typing a "trade or business" ?

■ The ALJ determined that plaintiff's typing did not qualify as a bona fide trade or business because the evidence showed that she did not perform typing with the requisite regularity and continuity. [AR 18–19]. The ALJ's conclusions are supported by the record.

As the ALJ noted, plaintiff admittedly performed work as a typist during part of 1993, at most. [AR 18, 46–48]. Plaintiff testified that she first sought typing work during the interval between her residencies, but she did not provide details about the dates, frequency, or duration of her typing assignments.[2] [AR 43–50]. Plaintiff also testified that she did not perform typing for any clients other than Dean and Smyth, that Smyth hired her after she began her UCLA residency in July 1993, and that she stopped typing for pay when her accident occurred in November 1993. [AR 19, 43–50].

In his declaration (which was executed and submitted after the hearing), Dean stated that plaintiff worked a total of 380 hours for him in 1993. [AR 140–141]. The record also includes a letter dated June 10, 1993, to plaintiff from Dean which states: "As you know, you have worked for us a total of 380 hrs at $20 per hour and we owe you a total of $7600." [AR 127]. In short, the evidence shows that plaintiff could have performed typing for pay for no more than nine or ten weeks total during the first six months of 1993.

Plaintiff testified that Smyth hired her for typing after she started her residency at UCLA in July 1993, but plaintiff offered no details and did not produce any contemporaneous evidence to substantiate that assertion. The letter in the record from Smyth to plaintiff tendering his belated payments is dated October 1996, three years after plaintiff allegedly worked for him. [AR 133]. Smyth's letter refers to "the typing that you performed for me between June and November of 1993," but

2. During the hearing, plaintiff had difficulty recalling whether she was paid by the hour or by some other measure, and she could not recall her hourly rate. [AR 44–45]. Reminded that Dean stated that he had paid her $20 per hour, plaintiff replied: "Okay.... I, I really don't know.... It's been a long time so I don't remember but I, I think I kept track of hours and added it up." [AR 45]. The ALJ also questioned plaintiff about her testimony that she "was doing so well with [typing]" that she continued doing it during her residency at UCLA "to supplement her income." [AR 44]. The ALJ said that "doesn't make a lot of sense to me," noting that plaintiff allegedly continued typing work even though Dean

had paid her only part of what she was owed and not a very large sum, and that she maintained that she did typing work for Smyth after beginning a demanding residency, even though he did not pay her. [AR 46–49]. Plaintiff responded that she "had no doubt that they would pay me" because she "trust[s] people," and that "I saw that the guy has financial problems and he needed help and, and he appreciated my work and I enjoyed doing the work and I, I knew he was going to pay me as soon as he could." [AR 48]. Plaintiff did not offer any evidence suggesting that she made any attempt to collect the amounts that she allegedly was owed.

the letter does not specify the dates or the number of hours involved. [AR 133]. The ALJ reasonably concluded that plaintiff's testimony and the documentary evidence from Dean and Smith showed that her typing was neither regular nor continuous.

The ALJ also relied on plaintiff's federal income tax returns to find that her typing was not regular and continuous. [AR 18–19]. He noted that plaintiff did not report any self-employment income when she initially filed her 1993 and 1994 federal income tax returns. After her first application for disability insurance benefits was denied, plaintiff filed amended tax returns for 1993 and 1994 for the purpose of reporting income from self-employment.[3] [AR 4, 19, 33, 122, 129–132]. The ALJ also observed that plaintiff cited her primary profession as "doctor" on her 1995 and 1996 tax returns, a representation that is inconsistent with her allegation that she received earnings during those years solely from her past self-employment as a typist. [AR 19, 47, 100–101, 105].

In denying review of the ALJ's decision, the Appeals Council cited additional evidence to support the ALJ's finding that plaintiff's typing did not constitute a trade or business. The Appeals Council noted

that when plaintiff filed her first application for benefits in December 1994, she provided her work history for the past fifteen years, including her positions at Stanford Hospital and UCLA, but she did not mention any work as a typist. [AR 4]. The Appeals Council also stated that during an in-person interview conducted at a local Social Security office on December 12, 1997, after plaintiff filed her second application for benefits, plaintiff

> characterized [her] work activity as a typist as a 'one-arm typist' who types with her left hand. Because you lost the use of your right arm as a result of the motor vehicle accident in November 1993, this would suggest that you[r] alleged typing activity took place thereafter, which is at odds with your current account, through your representative, that all activity ended [in] November 1993 and that you were merely paid in different years thereafter for your 1993 work.

[AR 5]. The record includes a report of contact prepared by the person who interviewed plaintiff. [AR 122]. The report states: "She alleges that she is a one arm typist and that she types with her left hand since her right arm and hand are completely paralyzed." [AR 122].[4] The

---

3. The amended returns were filed in 1996. [*See* AR 4, 33, 122]. The record also indicates that information reported on plaintiff's 1995 federal tax return was changed to reflect an increase in self-employment income. The copy of plaintiff's 1995 income tax return in the record includes the following entry: "Self-employed income of 2,182 omitted in error on the original tax return. The additional tax is the increase in self-employed income." [AR 109; *see also* AR (notice to plaintiff from the Internal Revenue Service regarding increase in self-employment tax for tax year 1995)].

4. Although it appears that the evidence concerning plaintiff's prior application and the report of contact was presented to the ALJ as well as to the Appeals Council [*see* AR 4–6,

33, 122], the ALJ did not discuss it in his decision. Nonetheless, since that evidence forms part of the record, the court may consider it in determining whether the Commissioner's decision is supported by substantial evidence. *Cf.* 20 C.F.R. §§ 404.970, 416.1470 (stating that the Appeals Council shall consider additional evidence that relates to the period on or before the date of the ALJ's decision, and will review the case if it finds that the ALJ's decision is contrary to the weight of the evidence currently of record); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir.) (stating that the court may consider additional evidence presented to the Appeals Council to determine if substantial evidence supports the Commissioner's decision), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).

Appeals Council cited the discrepancies in plaintiff's post-hoc accounts of her work activity, the absence of contemporaneous business records, and plaintiff's initial failure to report self-employment income on her tax returns as a basis for denying review. [AR 5].[5]

Contrary to plaintiff's argument, neither the ALJ nor the Appeals Council impermissibly singled out plaintiff's tax returns or any other single piece of evidence as a basis for finding that plaintiff's typing was not regular and continuous. Rather, the ALJ and the Appeals Council rationally concluded that the weight of the evidence-including plaintiff's testimony about her typing activity, her conflicting statements about her occupation, the lack of contemporaneous business records, and her initial failure to report any self-employment income for 1993 and 1994-showed that plaintiff's typing activity was no more than a "sporadic activity" or an occasional commercial transaction, rather than a "trade or business" giving rise to self-employment coverage. *See Groetzinger,* 480 U.S. at 35, 107 S.Ct. 980 (stating that a "sporadic activity" does not qualify as a "trade or business"); *Biddulph,* 1 F.Supp.2d at 20 (explaining that one function of the "trade or business" requirement is to separate

"one-time, or even occasional, commercial transactions from one's non-investment, regular commercial activities") (citing *Groetzinger,* 480 U.S. at 35–36, 107 S.Ct. 980).

■ Plaintiff's federal tax returns are not controlling on the question of the existence of a "trade or business." *See Biddulph,* 1 F.Supp.2d at 20–21 (explaining that although Congress contemplated that federal income tax returns would be "the central means" for determining self-employment income, "the Commissioner may require such verification as [she] deems necessary before including self-employment income in [her] records") (citing 42 U.S.C. §§ 405(a),(c)(2)(A)). The ALJ was entitled to weigh all of the evidence of record, and to consider "whether evidence submitted, including evidence of actual receipt of income, is satisfactory." *Biddulph,* 1 F.Supp.2d at 21. In particular, the ALJ is obliged to consider whether:

(a) Information contained in the evidence was given by a person in a position to know the facts;

(b) There was any reason to give false information when the evidence was created;

**5.** The record also contains what appears to be a copy of plaintiff's earnings record, as maintained by the Commissioner. [AR 65–69]. *See* 42 U.S.C. § 405(c)(2)(A) (stating that the Commissioner "shall establish and maintain" records of wages and self-employment income). That document includes entries stating that plaintiff does not meet the tests for insured status for disability insurance benefits. [*See* AR 65, 67]. The Commissioner's record of a claimant's earnings may be amended if errors or omissions are brought to the Commissioner's attention within three years, three months and fifteen days of the year in question. *See* 42 U.S.C. § 405(c)(1)(B),(c)(3)-(4); 20 C.F.R. § 404.802–404.803, 404.820–404.821; *Chapman,* 236 F.3d at 482. In general, the amount of self-employment income shown on

a claimant's earnings record is deemed "conclusive" after the statutory time period has expired. *See* 42 U.S.C. § 405(c)(3)-(4); 20 C.F.R. § 404.803; *Chapman,* 236 F.3d at 482–483. Where certain other conditions are met, however, the Commissioner "may change or delete any entry with respect to wages or self-employment income" after expiration of the statutory time period to conform her records to tax returns or portions thereof that were filed within the statutory time period. *See* 42 U.S.C. § 405(c)(3)-(4); 20 C.F.R. §§ 404.803, 404.820–404.823; *Chapman,* 236 F.3d at 482–483. The Commissioner does not contend that the time period or any other statutory condition bars amendment of plaintiff's earnings record to reflect the self-employment income she alleges.

(c) Information contained in the evidence was given under oath, or with witnesses present, or with the knowledge there was a penalty for giving false information;

(d) The evidence was created at the time the event took place or shortly thereafter;

(e) The evidence has been altered or has any erasures on it; and

(f) Information contained in the evidence agrees with other available evidence, including [the Commissioners's] records.

*Biddulph*, 1 F.Supp.2d at 21 (quoting 20 C.F.R. § 404.708); *cf. Matta v. Secretary of Health & Human Services*, 806 F.2d 287, 289 (1st Cir.1986) (affirming the Commissioner's finding that the claimant did not have self-employment income where the claimant's statements conflicted, her testimony was vague, and, aside from brief statements written by her alleged suppliers and one customer, she lacked "even the most rudimentary business records to back up the claim of self-employment earnings").

The cases on which plaintiff relies to support her position are distinguishable. In *Groetzinger*, for example, the respondent spent six days a week for forty-eight weeks gambling at racetracks. *Groetzinger*, 480 U.S. at 24, 107 S.Ct. 980. He spent

a substantial amount of time studying racing forms programs, and other materials. He devoted from 60 to 80 hours a week to these gambling-related endeavors.... He had no other profession or type of employment.... Respondent kept a detailed accounting of his wagers and every day noted his winnings and losses in a record book.

*Groetzinger*, 480 U.S. at 24–25, 107 S.Ct. 980. The respondent also reported his gambling losses on his tax return for the year in question. *Groetzinger*, 480 U.S. at 25, 107 S.Ct. 980. Based on those facts,

the Supreme Court held that the respondent's gambling constituted a "trade or business" because it was "pursued full time, in good faith, and with regularity, to the production of income for a livelihood .... Constant and large-scale effort on his part was made. Skill was required and applied. He did what he did for a livelihood, though with a less than successful result." *Groetzinger*, 480 U.S. at 35–36, 107 S.Ct. 980. Even if plaintiff's testimony were believed, her alleged typing activity bore little resemblance to the type of full-time, sustained daily activity for profit described in *Groetzinger*.

Similarly, in *Barry v. Shalala*, 840 F.Supp. 29 (S.D.N.Y.1993), the court held that full-time panhandling was a "trade or business" because the plaintiff "begged for money with continuity and regularity, as well as with the purpose of obtaining income. He treated panhandling as a 'serious business.' Like any structured activity, he reported to a particular location every day and performed a particular set of behaviors.... In short, plaintiff's panhandling required considerable effort." *Barry*, 840 F.Supp. at 32–33. In contrast, the ALJ in this case found that plaintiff did not provide typing services with continuity and regularity. [AR 18–19]. For the reasons described above, that finding is supported by substantial evidence.

Finally, in *Biddulph*, the 65 year-old plaintiff started a business out of her home in order to gain enough quarters of coverage to qualify for retirement benefits, as the Social Security Administration had "invited her to do" after finding that she lacked sufficient coverage. *Biddulph*, 1 F.Supp.2d at 20. During a two-year period, the plaintiff operated a business providing room and board, babysitting services, occasional baking, and sewing. The court held that the plaintiff was engaged in a "trade or business." The court empha-

sized that (1) the plaintiff's motivation in starting the business was to meet the requirements for additional quarters of coverage; (2) the plaintiff filed income tax returns for the years in question reflecting self-employment income; (3) the plaintiff's social security earnings record reflected that self-employment income and showed sufficient quarters of coverage, but the Commissioner disregarded that evidence; (4) the Commissioner wrongly disaggregated the services plaintiff offered, when those services were all related and should have been aggregated; (5) the Commissioner relied on a standard other than that articulated in *Groetzinger;* and (6) the plaintiff provided some evidence of her expenses as well as receipts, and no evidence in the record conflicted with her "fairly detailed business records." *Biddulph,* 1 F.Supp.2d at 14–22.

■ Of particular significance is the inference the court in *Biddulph* drew with respect to the plaintiff's motivation. In that case, the plaintiff had the opportunity to earn additional quarters of coverage by complying with regulations regarding self-employment income. In this case, plaintiff did not have the opportunity or motivation to earn additional quarters of coverage prospectively; instead, she had to persuade the Commissioner that she had generated self-employment income in the past that would give her sufficient quarters of coverage and satisfy the 20/40 rule. *See Biddulph,* 1 F.Supp.2d at 21 (cautioning against confusing "an applicant's incentive to earn additional quarters of coverage with an incentive to falsely report self-employment income to the agency"). The ALJ and the Appeals Council were not required to ignore the possibility that plaintiff's evidence was a "ruse," a term employed by plaintiff's attorney [AR 52], where the evidence showed no indicia of self-employment until after plaintiff's first application for disability insurance benefits was denied for insufficient coverage. [*See*

AR 4–6, 18–20]. *See Nieves v. Secretary of Health & Human Services,* 1993 WL 126029, *1–*3 (D.Puerto Rico 1993) (holding that the claimant failed to show convincing evidence of the regularity and accuracy of his tax returns where (1) those returns were prepared one and two years after the alleged work activity occurred; (2) claimant presented evidence under penalty of perjury from several sources stating that they had employed him to perform gardening and odd jobs and indicating the compensation they had paid, but the claimant had no records of his work activities, and he could not recall his activities due to an alleged memory loss; (3) the claimant "had reason to give false information" because "[h]e knew at the time he filed the returns that his disability insured status hinged upon a showing of more quarters of coverage"; (4) the information in the tax returns conflicted with the information in the Secretary's earnings records; and (5) the statements of the people for whom the claimant allegedly worked were not fully compatible with the information contained in the tax returns); *Betancourt Betancourt v. Secretary of Health & Human Services,* 754 F.Supp. 7, 10 (D.Puerto Rico 1991) (affirming the ALJ's finding of insufficient coverage where the claimant filed tax returns showing self-employment income but submitted no other business records, the claimant had filed a previous application stating that he was not self-employed for at least part of the period for which he later claimed income, and that application had been finally denied); *see also Jabbar v. Secretary of Health & Human Services,* 855 F.2d 295, 298 (6th Cir.1988) (per curiam) (acknowledging that the filing of tax returns and the payment of taxes "may not be evidence that the underlying income was actually earned," but holding that a decedent's tax returns were "convincing" evidence of self-employment in-

come utilizing the factors set forth in 20 C.F.R. § 404.708 because the decedent was a young man in apparently good health when he was killed in a car accident, the uncontradicted evidence showed that he had filed the tax returns and paid the taxes before his death, and therefore if the decedent "had any incentive to provide false information in the returns, it would have been to understate the gross income and overstate expenses to decrease his tax liability" rather than to overstate his income in order to provide survivors' benefits to his family).

Citing *Gardner v. Heckler*, 777 F.2d 987, 990 (5th Cir.1985), plaintiff contends that the ALJ was not permitted to draw a negative inference from the fact that plaintiff filed amended tax returns. [*See* Plaintiff's Opposition at 5–6]. Unlike in *Gardner*, however, the ALJ and the Appeals Council did not reject plaintiff's claims solely because she filed amended tax returns. *See Gardner*, 777 F.2d at 990 (concluding that "the only basis for the ALJ's denial of insured status" to the claimant was his belief that the claimant's primary motivation for filing an amended tax return was to collect benefits).

*Gardner* is distinguishable in other respects as well. First, the amended returns in *Gardner* restated the claimant's self-employment income to show net income instead of a loss, but the original returns reflected the *fact* of self-employment, and it was not disputed that the claimant owned a television repair business. *See Gardner*, 777 F.2d at 989 & n. 5. Second, the court in *Gardner* characterized the claimant's tax return for the disputed year as "immensely complicated," a circumstance which increased the likelihood of a good-faith mistake. *See Gardner*, 777 F.2d at 991. Third, the claimant in *Gardner* realized "substantial income" from selling his business during the year covered by the amended return, so the fact

that he had not shown net income from self-employment for the preceding five years did not detract from the credibility of his restatement of income for the year in question. *See Gardner*, 777 F.2d at 991 n. 5. Finally, in *Gardner*, the claimant and his CPA produced the claimant's business ledger, receipts, invoices, and checks to substantiate the restated income figures. *Gardner*, 777 F.2d at 991. The court emphasized that those records were "much more credible" than the original tax return, and that there was "not a scintilla of evidence" to suggest that evidence was "manufactured." *Gardner*, 777 F.2d at 991. In short, the record before the ALJ in *Gardner* was very different from the record in this case.

■ Plaintiff also argues that the ALJ committed reversible error because he "ignored" the *Groetzinger* standard and considered a factor that *Groetzinger* disapproved, namely, whether or not plaintiff "held herself out" as a typist. *See Groetzinger*, 480 U.S. at 28–32, 107 S.Ct. 980 (rejecting "holding oneself out" as an element of the trade or business analysis because it was a "gloss" developed by Justice Frankfurter in a concurring opinion that, "while entitled to respect," has never "achieved the status of a Court ruling") (citing *Deputy v. du Pont*, 308 U.S. 488, 499, 60 S.Ct. 363, 84 L.Ed. 416 (1940) (Frankfurter, J., concurring)). The ALJ, however, did not "ignore" *Groetzinger*; rather, he cited that case, discussed the two-pronged standard, and applied it to the evidence. Although the ALJ also discussed the "holding oneself out" factor, he did not commit reversible error because he thoroughly discussed the two elements of the *Groetzinger* standard, and his analysis is sufficient to support his finding that plaintiff did not engage in a "trade or business." Since the Appeals Council denied review, whether its decision correctly

applied *Groetzinger* is beside the point because the ALJ's decision is the final decision of the Commissioner.

For the foregoing reasons, the ALJ's finding that plaintiff's typing did not constitute a "trade or business" within the meaning of the Act is supported by substantial evidence and reflects application of the proper legal standards.

**Were plaintiff's earnings received during the years 1994–1996 attributable to the years in which they were received?**

Plaintiff argues that the ALJ improperly determined that payments plaintiff allegedly received during the years 1994 through 1996 were not attributable to the year received. [Plaintiff's Memorandum at 9–12]. That argument misreads the ALJ's decision.

The ALJ acknowledged that if plaintiff's typing activities qualified as a "trade or business," then income she earned in a subsequent year from typing she performed in 1993 could establish coverage in the year received. [*See* AR 19]. The ALJ, however, found that plaintiff's typing did not rise to the level of a "trade or business." In making that determination, the ALJ permissibly considered evidence that plaintiff had only two clients and admittedly did not render any services to them after 1993, yet one of those clients allegedly paid her nothing until 1996, and the second paid her in three installments over a two-year period. [AR 18–20]. The ALJ did not rely merely on the fact of delayed payment, since, as he readily acknowledged, income may be attributable to services performed in a prior year. Instead, the ALJ considered the belatedness, irregularity, rationale, documentation, and timing of those payments, in conjunction with other evidence in the record, to find that plaintiff had not demonstrated the existence of a "trade or business." Consequently, the ALJ properly concluded that the earnings plaintiff allegedly received from typing were not self-employment income entitling her to quarters of coverage, regardless of when they were received.

### Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, plaintiff's motion for summary judgment is **denied,** defendant's motion for summary judgment is **granted,** and defendant's decision is **affirmed.**

IT IS SO ORDERED.

### JUDGMENT

**IT IS ADJUDGED** that defendant's decision is **affirmed.**